MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA  90067-6029
Telephone:  (310) 789-3100
Facsimile:   (310) 789-3150

ANDREW J. ENTWISTLE *(Pro Hac Vice)*
aentwistle@entwistle-law.com
VINCENT R. CAPPUCCI *(Pro Hac Vice)*
vcappucci@entwistle-law.com
ARTHUR V. NEALON *(Pro Hac Vice)*
anealon@entwistle-law.com
ROBERT N. CAPPUCCI *(Pro Hac Vice)*
rcappucci@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY  10171
Telephone:  (212) 894-7200
Facsimile:   (212) 894-7272

[Additional Counsel for Plaintiff on Signature Page]

*Attorneys for Plaintiff Timber Hill LLC*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| TIMBER HILL LLC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PERSHING SQUARE CAPITAL MANAGEMENT, L.P., et al.,<br><br>Defendants. | Case No.  2:17-cv-04776 DOC (KESx)<br><br>The Hon. David O. Carter<br><br>CLASS ACTION<br><br>MEMORANDUM IN SUPPORT OF PLAINTIFF TIMBER HILL LLC'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF SELECTION OF LEAD COUNSEL AND CONSOLIDATION OF FUTURE RELATED ACTIONS ON BEHALF OF DERIVATIVES INVESTORS<br><br>DATE:       October 2, 2017<br>TIME:       8:30 a.m.<br>PLACE:      Courtroom 9D |

1

# <u>TABLE OF CONTENTS</u>

2

I.      PRELIMINARY STATEMENT ....................................................... 1

II.     BACKGROUND ............................................................................ 4

III.    TIMBER HILL SHOULD BE APPOINTED LEAD PLAINTIFF ............... 7

        A.      The PSLRA Standard For Appointment Of Lead Plaintiff ................. 7

        B.      Timber Hill Has Satisfied The PSLRA Requirements And
                Should Be Appointed Lead Plaintiff ....................................... 8

                1.      This Motion Is Timely And Proper ............................ 8

                2.      Timber Hill Believes It Has The Largest Financial Interest
                        In The Relief Sought By The Class ........................... 10

                3.      Timber Hill Satisfies Fed. R. Civ. P. 23 .................... 11

IV.     TIMBER HILL'S CHOICE OF LEAD COUNSEL SHOULD BE
        APPROVED ................................................................................ 14

V.      THE COURT SHOULD ORDER CONSOLIDATION OF ALL
        FUTURE RELATED DERIVATIVES ACTIONS ..................................... 16

VI.     CONCLUSION .......................................................................... 16

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5294220v1/015666

i

# TABLE OF AUTHORITIES

## Cases

*Bricklayers of Western Pennsylvania Pension Plan v. Helca Min. Co.*,
Nos. 2:12-cv-00042-BLW, 2:12-cv-00067-BLW, 2012 WL 2872787 (D.
Idaho July 12, 2012) .......................................................................... 10, 11

*Hanon v. Dataproducts Corp.*,
976 F.2d 497 (9th Cir. 1992) ......................................................................12

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ................................................................ 10, 11

*Knox v. Yingli Green Energy Holding Co., Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................ 10, 11

*Pace v. Quintanilla*,
No. SACV 14-2067-SOC (RNBx), 2014 WL 4180766 (C.D. Cal. Aug. 19,
2014) ..........................................................................................................14

*Petersen v. Costco Wholesale Co.*,
No. SA13-CV-1292 DOC (JCGx), 2016 WL 6768911 (C.D. Cal. Nov. 15,
2016) ..........................................................................................................12

*Schriver v. Impac Mort. Holdings, Inc.*,
No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, (C.D. Cal. May 2,
2006) ..........................................................................................................11

*Tanne v. Autobytel, Inc.*,
226 F.R.D. 659 (C.D. Cal. 2005) ........................................................ 12, 13

## Statutes

15 U.S.C § 78(t)(a) .........................................................................................1

15 U.S.C. § 78n(e) ..........................................................................................1

15 U.S.C. § 78t-1, and Section 20(a).............................................................1

15 U.S.C. § 78u-4(a)(3)(A)(i).........................................................................7

15 U.S.C. § 78u-4(a)(3)(A)(i) and (a)(3)(B)(iii)(aa) .................................10

15 U.S.C. § 78u-4(a)(3)(A)(i)(I) & (II) .......................................................9

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ..............................................................9

15 U.S.C. § 78u-4(a)(3)(B) .....................................................................11

15 U.S.C. § 78u-4(a)(3)(B)(i) .................................................................2, 7

15 U.S.C. § 78u-4(a)(3)(B)(iii) ...............................................................11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...........................................................2, 8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) .....................................................10

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................14

15 U.S.C. § 78u-4(b)(3)(B) .......................................................................1

15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B) ....................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii) .................................................................2

**Rules**

Fed. R. Civ. P. 23(a) ........................................................................2, 11, 12

Fed. R. Civ. P. 23(a)(3)...........................................................................12

Fed. R. Civ. P. 23(a)(4).........................................................................12

Fed. R. Civ. P. 2311.......................................................................passim

**Regulations**

17 C.F.R. § 240.14e-3, Section 20A.........................................................1

**Other Authorities**

1995 U.S.C.C.A.N. 730 ..........................................................................14

H.R. Conf. Rep. No. 104-369 ................................................................14

iii

1    Plaintiff Timber Hill LLC ("Timber Hill") respectfully submits this
2  memorandum of points and authorities in support of its motion pursuant to Section
3  21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C.
4  § 78u-4(b)(3)(B), as amended by the Private Securities Litigation Reform Act of
5  1995 ("PSLRA"), for the entry of an Order:  (1) appointing Timber Hill as lead
6  plaintiff for a class (the "Derivatives Class") consisting of:  sellers of Allergan, Inc.
7  ("Allergan") call options,   purchasers of Allergan put options and sellers of
8  Allergan equity forward contracts from February 25, 2014 through April 21, 2014,
9  inclusive (the "Class Period"); (2) approving Timber Hill's selection of Entwistle &
10  Cappucci LLP ("Entwistle & Cappucci") and Susman Godfrey L.L.P. ("Susman
11  Godfrey") to serve as Co-Lead Counsel for lead plaintiff and the Derivatives Class;
12  and (3) consolidating any subsequently filed, removed or transferred related actions
13  on behalf of derivatives investors under the caption *In re Allergan, Inc. Proxy*
14  *Violation Derivatives Litigation*.

15  I.    **PRELIMINARY STATEMENT**

16    Timber Hill brings this action against Pershing Square Capital Management,
17  L.P. ("Pershing"), Valeant Pharmaceuticals International, Inc. ("Valeant") and
18  related defendants[1] who violated the federal securities laws by enabling and
19  encouraging defendant Pershing to acquire billions of dollars of Allergan securities
20  while possessing the non-public knowledge the transaction likely would proceed as
21  a hostile tender offer.  Pershing's acquisition of Allergan securities violated, *inter*
22  *alia*, Section 14(e) of the Exchange Act, as amended by the Williams Act of 1968,
23  codified at 15 U.S.C. § 78n(e), Rule 14e-3 promulgated thereunder, codified at 17
24  C.F.R. § 240.14e-3, Section 20A of the Exchange Act, codified at 15 U.S.C. § 78t-
25  1, and Section 20(a) of the Exchange Act, codified at 15 U.S.C § 78(t)(a).

26  _____

27    [1] PS Management GP, LLC, William Ackman ("Ackman"), (founder and CEO of
Pershing), Pershing Square, L.P., Pershing Square II, L.P., Pershing Square GP,
28  LLC, Pershing Square International, Pershing Square Holdings, Ltd., (together,
with Pershing, "Pershing Defendants") and Michael Pearson ("Pearson") (former
CEO of Valeant).

This action is related to *In re Allergan, Inc. Proxy Violation Securities Litigation*, Case No. 8:14-cv-2004-DOC (KESx) (C.D. Cal. Dec. 16, 2014) (the "Common Stock Class Action" or "*Basile*").  In *Basile*, the Court recently certified a class consisting of all persons who sold Allergan common stock contemporaneously with defendants' purchases of Allergan common stock.  Lead plaintiffs in *Basile* do not purport to represent persons or entities that traded Allergan derivative and securities, indeed, such derivative securities traders are excluded from the recently certified class.

Accordingly, on June 28, 2017, plaintiff Timber Hill filed the instant action in order to protect the interests of the Derivatives Class encompassing all persons or entities that sold Allergan call options, purchased Allergan put options, or sold Allergan equity forward contracts during the Class Period.   These Class members incurred significant harm when they sold call options, purchased put options or sold equity forward contracts during the time period that defendants are alleged to have been secretly building their ownership positions in furtherance of defendants' takeover scheme.

Pursuant to the PSLRA, this Court must appoint the "most adequate plaintiff" to serve as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is required to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Fed. R. Civ. P. Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Timber Hill satisfies all of the statutory requirements for appointment as lead plaintiff of the Derivatives Class.  Specifically, Timber Hill:  (1) has timely filed this motion for appointment as lead plaintiff; (2) believes it has the largest financial interest in this litigation; and (3) will adequately represent the interests of the Derivatives Class since it satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23(a).  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  In addition, Timber Hill's

2

claims are typical, if not identical, to the other Derivatives Class members. Timber Hill can adequately represent the interests of the Derivatives Class since it has no conflicts with other class members, and has chosen highly qualified Lead Counsel who have been and can continue to vigorously pursue this litigation on behalf of the Derivatives Class.

As a large institutional investor, Timber Hill is an ideal lead plaintiff to represent the Derivatives Class. Moreover, Timber Hill is familiar with the role of and responsibility of a class representative plaintiff because among other things, it has previously participated in other complex securities litigation matters, and has served in a leadership role. In the present action, Timber Hill has committed the resources necessary to vigorously pursue claims on behalf of the Derivatives Class, and has been actively involved in this action since its inception. Among other things, Timber Hill, or its selected counsel has: (i) filed the only complaint on behalf of the Derivatives Class; (ii) met and conferred with counsel for defendants in the present case as well as counsel for the plaintiffs and defendants in *Basile*; (iii) filed a status report with the Court; (iv) attended the July 25, 2017 hearing before the Court; (v) met with the Special Masters in this action and the *Basile* action; (vi) negotiated a scheduling order; (vii) negotiated a protective order; (viii) moved for relief from the PSLRA discovery stay; (ix) further negotiated discovery-related issues with defendants separately, and in response to the Court's and Special Masters' directions; and (x) commenced document discovery and review. Accordingly, Timber Hill is the presumptive lead plaintiff.

Timber Hill's selection of Entwistle & Cappucci and Susman Godfrey as Co-Lead Counsel should likewise be approved by the Court because, pursuant to the PSLRA, the presumptive lead plaintiff is entitled to select the Lead Counsel of its choice. Entwistle & Cappucci has extensive experience in the successful prosecution of securities class actions, and will more than adequately represent the interests of all Derivatives Class members. Timber Hill also seeks the appointment

3

of Co-Lead Counsel Susman Godfrey, a firm with a nationwide reputation for excellence in the litigation of complex class action cases.

## II.    BACKGROUND

This action arises from events preceding Valeant's June 17, 2014 announcement of a tender offer for Allergan.  As early as February 6, 2014 and continuing for the next several weeks, Valeant took substantial steps toward a tender offer by engaging in concerted efforts with defendant Ackman and Pershing. Among other things, Valeant:  (i) engaged legal advisors; (ii) engaged financial advisors; (iii) prepared financial models with offer pricing scenarios, expected stock price impact and projected synergies; (iv) held multiple Board of Directors meetings; (v) negotiated the respective financial commitments of Valeant and Pershing; and (vi) agreed to commit over $75 million to the entity that would ultimately acquire Allergan securities.

On February 9, 2014, Valeant and Pershing entered into a confidentiality agreement, after which defendant Pearson informed Ackman of Valeant's interest in a potential transaction with Allergan.  With its inside knowledge of Valeant's impending takeover, Pershing agreed to acquire a significant Allergan stake using its own funds, in order to support Valeant's efforts and to secure massive profits for itself.   On February 13, 2014, representatives of Valeant and Pershing and their respective counsel met to discuss a potential transaction involving Allergan.  On February 15, 2014, Andrew Davis, Vice President of Business Development at Valeant, emailed Pearson attaching a document acknowledging that the "Allergan Opportunity" would consist of a "[h]ostile cash and stock merger." *See* Timber Hill's Class Action Complaint, ECF No. 1 at 89-104.

Between February 20 and 25, 2014, representatives of Valeant and Pershing and their respective counsel exchanged drafts of and negotiated a contractual and financial agreement ("the Relationship Agreement") related to the purchase of equity securities issued by Allergan.  The parties finalized and executed the

4

Relationship Agreement on February 25, 2014.  Under the Relationship Agreement, Valeant agreed to contribute $75.9 million — the maximum allowed without triggering antitrust disclosure requirements — to the purported "co-bidder entity" PS Fund 1, LLC ("PS Fund 1") to assist with the Pershing Defendants' acquisition of a significant stake of Allergan's stock at prices that were artificially depressed or failure to disclose Valeant's takeover plans.  Pershing supplied funds of over $3 billion, and retained sole control over PS Fund 1. *Id*. at 108-114.

In the Relationship Agreement, defendants specifically claimed to be "co-bidders" in connection with a potential Allergan transaction — likely in an effort to support a claimed argument that they were all the same "person" for purposes of the insider trading rules. *Id*. at 112.  PS Fund 1 secretly purchased a substantial amount of Allergan stock without filing disclosure documents with the Securities and Exchange Commission or paying any form of control premium.  *Id*. at 122. Pershing was the primary actor in purchasing Allergan stock; it provided approximately 97.5% of the funding for PS Fund 1, and the Relationship Agreement states that Pershing "will direct the management" of PS Fund 1.

Rule 14e-3 provides that, where any person has taken "a substantial step or steps" (the "offering person") to commence a tender offer of a target company, any "other person" who is in possession of material nonpublic information relating to that tender offer is prohibited from purchasing or selling any securities of the target company, unless the information is publicly disclosed within a reasonable time *prior* to the purchase or sale.

Valeant took substantial steps toward a tender offer for Allergan's stock beginning on or before February 6, 2014.  Moreover, having already been rebuffed, Valeant knew it would not likely be able to acquire Allergan through a "friendly" deal, and that a hostile tender offer was therefore inevitable.  Valeant told Pershing about Valeant's confidential plans to launch a tender offer *precisely because* Valeant expected and knew that Pershing would trade on that information.  Valeant

wanted as many shares as possible to be held by stockholders that Valeant perceived as likely to support an Allergan takeover, but since it could not pay for the shares directly, it turned to Pershing. The illicit tip from Valeant was Pershing's incentive to join the scheme.

In a series of complex and undisclosed transactions between February 25 and April 21, 2014, PS Fund 1 quickly acquired 9.7% of Allergan's stock (the "Purchase Program"), primarily through over-the-counter ("OTC") call options and OTC equity futures. Defendants began the Purchase Program at a time when they unquestionably had material nonpublic information relating to Valeant's forthcoming tender offer; in violation of Rule 14e-3's trading prohibition. Pershing knew that the announcement of Valeant's hostile offer for Allergan would trigger a bidding war and corresponding massive increase in Allergan's stock price. By the time "white knight" bidder Actavis, plc closed a deal to acquire Allergan on March 17, 2015, Pershing owned nearly 9.7% of Allergan's common stock – worth over $6 billion – which it rushed to cash out for a net profit of approximately ***$2.5 billion***. *Id*. at 187. In total, ***over 97%*** of this profit – or ***$2,536,145,765.95*** – was derived from PS Fund 1's purchases of derivatives. *Id*. at 188. Plaintiff and other derivatives investors suffered harm as a result of these trades because they did not know the information they were entitled to know under the disclose-or-abstain-from-trading principle of Rule 14e-3, and consequently traded Allergan derivatives without receiving the benefit of the premium that would have existed if the Pershing Defendants had timely disclosed what they knew about the takeover scheme. Pershing thus exploited exactly the sort of informational advantage that Rule 14e-3 was designed to prevent, and reaped billions in illicit profits at the expense of Timber Hill and other derivatives investors.

Defendants' illicit insider trading and securities warehousing scheme was effectuated through trading in Allergan derivative securities for the specific purpose of circumventing regulatory and disclosure requirements. Indeed, Pershing's

acquisition of Allergan derivatives was the "but for" cause that allowed defendants to carry out their insider trading scheme.  Defendants are alleged to be liable to plaintiff and other derivative securities investors for damages by reason of defendants' alleged misconduct.

III.    **TIMBER HILL SHOULD BE APPOINTED LEAD PLAINTIFF**

A.    **The PSLRA Standard For Appointment Of Lead Plaintiff**

The PSLRA sets forth the lead plaintiff selection procedures for "each private right of action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).  Specifically, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, provides that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class--
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)   that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Section 21D(a)(3)(B)(i) directs the Court to consider any motions by a purported class member to serve as lead plaintiff in response to any such notice by no later than 90 days after the date of publication of the aforementioned notice.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Under this section, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or

7

5294220v1/015666

members that the Court determined to be "most capable of adequately representing the interests of class members." *Id.*

The PSLRA requires the Court to adopt a rebuttable presumption that the "most adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

> (aa) has either filed the complaint or made a motion in response to [the aforementioned] notice;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure

*See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may only be rebutted by proof from a class member that the "most adequate plaintiff": (i) "will not fairly and adequately protect the interests of the class," or (ii) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." As discussed more fully below, neither of these factors applies to Timber Hill.

## B. Timber Hill Has Satisfied The PSLRA Requirements And Should Be Appointed Lead Plaintiff

Timber Hill should be appointed lead plaintiff of the Derivatives Class because it satisfies all of the PSLRA's requirements, is believed to have the largest financial interest in this litigation and otherwise meets the requirements of Fed. R. Civ. P. 23.

### 1. This Motion Is Timely And Proper

Timber Hill has demonstrated its readiness to serve as a representative of the Derivatives Class by filing the only complaint in this case.  Timber Hill has also signed a certification setting forth its transactions in call options and put options during the Class Period.  *See* Seltzer Decl., Ex. A.  In addition, Timber Hill has been actively involved in this litigation.  To date, Timber Hill has, among other things:  (i) filed the only complaint on behalf of the Derivatives Class; (ii) met and

8

conferred with counsel for defendants in the present case as well as counsel for the plaintiffs and defendants in *Basile*; (iii) filed a status report with the Court; (iv) attended the July 25, 2017 hearing before the Court; (v) met with the Special Masters in this action and the *Basile* action; (vi) negotiated a scheduling order; (vii) negotiated a protective order; (viii) moved for relief from the PSLRA discovery stay; (ix) further negotiated discovery-related issues with defendants separately, and in response to the Court's and Special Masters' directions; and (x)  commenced document discovery and review.   In addition, Timber Hill has committed substantial resources to pursue claims on behalf of the class.

Timber Hill's motion to serve as lead plaintiff is also timely.  As noted above, Timber Hill's complaint was filed in this Court on June 28, 2017.  On June 30, 2017, Timber Hill, through its counsel, published a notice of pendency of this action pursuant to Section 21D(a)(3)(A)(i) of the Exchange Act in *Business Wire*, a widely-distributed, business-oriented news service (the "Derivatives Notice").  *See* Seltzer Decl., Ex. B.  The Derivatives Notice properly informed putative class members of the pendency of this action, the specific legal claims asserted in the complaint, the proposed class period and the 60-day deadline by which other class members must move this Court to be appointed as lead plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(I) & (II).  The instant motion is being filed on August 29, 2017, which is within 60 days from the publication of the Derivatives Class Notice.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).

Finally, Timber Hill has selected and retained competent counsel to represent it and other members of the Derivatives Class.   Specifically, Timber Hill has selected Entwistle & Cappucci and Susman Godfrey, both experienced and well-qualified firms, to co-lead this litigation, and both firms have agreed to a fee structure that is designed to achieve the greatest possible recovery for the class. The firm resumes of Entwistle & Cappucci and Susman Godfrey, Timber Hill's choice of Co-Lead Counsel, are attached as Exhibit C and Exhibit D respectively, to

9

the Seltzer Declaration.  Also included as part of Exhibit D is the firm biography of Marc M. Seltzer, who is lead of the firm's effort in this litigation.  Accordingly, Timber Hill has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(A)(i) and (a)(3)(B)(iii)(aa).

## 2.   Timber Hill Believes It Has The Largest Financial Interest In The Relief Sought By The Class

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for appointment as lead plaintiff is the entity or group of persons that has the largest financial interest in the relief sought by the class.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  In order to do so, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  In calculating a proposed lead plaintiff's financial stake in the litigation, the Ninth Circuit recommends that the district court "select accounting methods that are both rational and consistently applied."  *Id.*, n. 4.[2]

During the Class Period, as evidenced by the accompanying certification (*See* Seltzer Decl., Ex. A), Timber Hill sold 4,894 Allergan call options, relating to underlying Allergan common stock valued at $66,737,500.  *Id*.  Additionally, Timber Hill purchased 2,383 put options during the Class Period, and the aggregate value of the underlying Allergan common stock that Timber Hill had the right to sell under these put options totaled $28,128,750.  *Id*.  The total aggregate value of Allergan common stock underlying Timber Hill's call option sales and put option

---

2 In the context of comparing various movants' financial stakes based on common stock transactions, courts in this Circuit typically consider the Olsten-Lax factors.  *See Knox v. Yingli Green Energy Holding Co., Ltd.,* 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (citations and internal quotations omitted).  However, at least one court in this Circuit has rejected Olsten-Lax in the context of determining a plaintiff's financial stake based on transactions in options.  *See*, e.g., *Bricklayers of Western Pennsylvania Pension Plan v. Helca Min. Co.*, Nos. 2:12-cv-00042-BLW, 2:12-cv-00067-BLW, 2012 WL 2872787 (D. Idaho July 12, 2012).

1    purchases is \$94,866,250.[3]   *Id.*   Timber Hill is presently unaware of any other

2    Derivatives Class member who has sought to be appointed as lead plaintiff of the

3    class.   Accordingly, Timber Hill has the largest financial interest and is thus the

4    presumptive "most adequate plaintiff."   15 U.S.C. § 78u-4(a)(3)(B)(iii).

5                    **3.    <u>Timber Hill Satisfies Fed. R. Civ. P. 23</u>**

6        In addition to possessing the largest financial interest in the outcome of the

7    litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule

8    23 of the Federal Rules of Civil Procedure."   15 U.S.C. § 78u-4(a)(3)(B).   Rule

9    23(a) provides that an action may be certified as a class action only if the following

10   requirements are satisfied:   (1) the class is so numerous that joinder of all members

11   is impracticable; (2) there are questions of law or fact common to the class; (3) the

12   claims or defenses of the representative parties are typical of the claims or defenses

13   of the class and (4) the representative parties will fairly and adequately protect the

14   interests of the class.   *See* Fed. R. Civ. P. 23(a).

15       The party moving for lead plaintiff need only make a preliminary showing of

16   the typicality and adequacy prongs of Rule 23(a) – those that directly address the

17   personal characteristics of the class representative – and defer examination of the

18   remaining requirements until the lead plaintiff moves for class certification.   *See*

19   *Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002) (vacating order appointing lead

20   plaintiff); *Schriver v. Impac Mort. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx),

21   2006 WL 6886020, at *3 (C.D. Cal. May 2, 2006) (granting motion for

22   consolidation of related cases, appointment of lead plaintiff, and appointment of

23   class counsel); *Knox*, 136 F. Supp. 3d at 1165.

24       As set forth below, Timber Hill satisfies both the typicality and adequacy

25   requirements of Rule 23.

26

27   ───────────────────────

28       3 These calculations are solely for purposes of this motion, and are not
     necessarily intended to represent the amount of, or method of, calculation of
     damages plaintiff may present at trial.

1

### a.     **Timber Hill's Claims Are Typical Of The Derivatives**
         **Class**

2

3       Timber Hill meets the typicality requirements of Fed. R. Civ. P. 23(a)(3).

4 Rule 23(a)(3) provides that the claims or defenses of the representative parties must

5 be typical of those of the class. *See* Fed. R. Civ. P. 23(a)(3). The "test of typicality

6 is 'whether other members have the same or similar injury, whether the action is

7 based on conduct which is not unique to the named plaintiffs, and whether other

8 class members have been injured by the same course of conduct.'" *Petersen v.*

9 *Costco Wholesale Co*., No. SA13-CV-1292 DOC (JCGx), 2016 WL 6768911, at *3

10 (C.D. Cal. Nov. 15, 2016) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508

11 (9th Cir. 1992)) (denying motion to decertify class). Here, the claims asserted by

12 Timber Hill are typical, if not identical, to the potential claims of other class

13 members. Timber Hill and each of the other class members: (i) traded in Allergan

14 derivative securities during the Class Period contemporaneously with defendants'

15 purchases; and (ii) were damaged thereby. *See Tanne v. Autobytel, Inc*., 226 F.R.D.

16 659, 667 (C.D. Cal. 2005) (finding typicality requirement met when the proposed

17 lead plaintiff "submitted a sworn certification indicating that he [traded the

18 company's] securities and suffered losses during the period."). Thus, Timber Hill's

19 claims are typical of those of other Derivatives Class members.

20
### b.     **Timber Hill Will Fairly And Adequately Represent**

21          **The Interests Of The Derivatives Class**

22

23       Timber Hill also satisfies the adequacy requirements of Fed. R. Civ. P. 23(a)

24 4). Under Fed. R. Civ. P. 23(a)(4), the representative parties must "fairly and

25 adequately protect the interests of the class." The PSLRA directs the Court to limit

26 its adequacy inquiry to the existence of any conflict between the interests of Timber

27 Hill and the members of the Derivatives Class. Thus, in determining whether

28 adequacy under Fed. R. Civ. P. 23(a)(4) is satisfied, the Court inquires whether a

12

5294220v1/015666

proposed lead plaintiff has "a sufficient interest in the outcome of the case" and a "willingness . . . to vigorously prosecute the action." *Autobytel*, 226 F.R.D. at 667-68.  The Court also "assess[es] whether [the proposed lead plaintiff] has interests antagonistic to the class, and whether his counsel have the necessary capabilities and qualifications." *Id*.

As evidenced by Timber Hill's substantial losses resulting from its sales of Allergan call options and purchase of Allergan put options during the Class Period, its interests are clearly aligned with the interests of the members of the class it seeks to represent.  There is also no evidence of any antagonism between Timber Hill's interests and those of the other members of the class.  As detailed above, Timber Hill shares identical or substantially similar questions of law and fact with the other members of the proposed class and its claims are typical of the members of the class.

Timber Hill has also taken significant steps which demonstrate that it will protect the interests of the class.  Among other things, Timber Hill has:  (i) filed the only complaint on behalf of the Derivatives Class; (ii) met and conferred with counsel for defendants in the present case as well as counsel for the plaintiffs and defendants in *Basile*; (iii) filed a status report with the Court; (iv) attended the July 25, 2017 hearing before the Court; (v) met with the Special Masters in this action and the *Basile* action; (vi) negotiated a scheduling order; (vii) negotiated a protective order; (viii) moved for relief from the PSLRA discovery stay; (ix) further negotiated discovery-related issues with defendants separately, and in response to the Court's and Special Masters' directions; and (x) commenced document discovery and review.  Moreover, Timber Hill has retained competent and experienced counsel to prosecute these claims and to investigate further the facts giving rise to this action.  Timber Hill's proposed Co-Lead Counsel are highly qualified, experienced in the prosecution of class actions involving federal securities law claims, and able successfully to conduct this complex litigation in a

professional manner.   Thus, Timber Hill satisfies the typicality and adequacy requirements of Fed. R. Civ. P. 23 for the purposes of this motion.

### c.     Timber Hill Is An Ideal Lead Plaintiff to Represent the Derivatives Class

As an institutional investor, Timber Hill also satisfies the PSLRA's goal of encouraging institutional investors to "take the reins" in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 755 (1995) (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representations in securities class actions."). Courts in this Circuit and others have noted this Congressional preference to appoint institutional investors, such as Timber Hill, as lead plaintiffs in federal securities class actions. *See, e.g., Pace v. Quintanilla*, No. SACV 14-2067-SOC (RNBx), 2014 WL 4180766, at *2 (C.D. Cal. Aug. 19, 2014) (Carter, J.) ("[C]ourts have found that small groups whose members have suffered substantial losses . . . are suitable lead plaintiffs.").

Timber Hill is a sophisticated institutional investor with a substantial financial stake in this litigation.   Timber Hill will have every incentive to vigorously pursue this case and to obtain the best possible recovery for the Derivatives Class. Appointing Timber Hill as lead plaintiff of the Derivatives Class would satisfy the PSLRA's aim of having the plaintiff class represented by an institutional investor with a significant stake in the outcome of the litigation.

## IV.   TIMBER HILL'S CHOICE OF LEAD COUNSEL SHOULD BE APPROVED

As the presumptive lead plaintiff, Timber Hill's selection of the law firms of Entwistle & Cappucci and Susman Godfrey to serve as Co-Lead Counsel, pursuant to 15 U.S.C. 78u-4(a)(3)(B)(v), should be approved by the Court.

As reflected in its firm resume, Entwistle & Cappucci possesses extensive experience litigating securities class actions, having successfully prosecuted some

of the largest and highest-profile securities class actions in history (*See* Seltzer Decl., Ex. C).  Entwistle & Cappucci has distinguished itself as one of the nation's premier complex litigation firms, and currently serves as Lead Counsel and/or as a member of Plaintiffs' Executive Committee in many high-profile securities class actions pending throughout the country.

In recent years, Entwistle & Cappucci has secured billions of dollars in recoveries on behalf of defrauded public and private institutional investors, including:  *In re Royal Ahold, N.V. Secs & ERISA Litig.*, MDL-01539 (D. Md.) (obtaining $1.1 billion recovery for class of investors); and *In re BankAmerica Securities Litigation*, No. 99-1264-CEJ (E.D. Mo.) (obtaining $490 million recovery for class of investors).

Since the firm's founding in 1980, Susman Godfrey has served as lead counsel in hundreds of class actions and other complex commercial disputes in courts throughout the country.  Susman Godfrey's practice is dedicated exclusively to litigating and trying lawsuits.  The firm has represented clients in some of the largest and most complex cases ever litigated, and has demonstrated that it has the ability and resources to handle those cases effectively and efficiently.

Susman Godfrey's experience, track record of success and staying power are reflected in its wide recognition as one of the nation's leading trial firms, including by *The American Lawyer* in its first-ever "Litigation Boutique of the Year" award and, more recently, by being named in 2014 to *National Law Journal's* "America's Elite Trial Lawyers" list.  The firm's lawyers are consistently recognized as "Super Lawyers" and "Rising Stars" in the states where they practice.  Susman Godfrey currently has more than one hundred lawyers nationwide in its four offices, over 90% of whom served as federal judicial clerks.

Accordingly, the Court should approve Timber Hill's selection of Entwistle & Cappucci and Susman Godfrey as Co-Lead Counsel for plaintiff and the Derivatives Class in this case.

5294220v1/015666

1

## V.  THE COURT SHOULD ORDER CONSOLIDATION OF ALL

2

### FUTURE RELATED DERIVATIVES ACTIONS

3      Plaintiff respectfully requests that the Court order any subsequently filed

4  action related to the claims asserted in the above-captioned action brought on behalf

5  of Allergan derivatives investors be consolidated with the present action.

6  Additionally, plaintiff further requests that every future pleading in the above-

7  captioned action have the caption:  *In re Allergan, Inc. Proxy Violation Derivatives*

8  *Litigation*, Case No.  2:17-cv-04776 DOC (KESx).

9  ## VI.  CONCLUSION

10      For the foregoing reasons, Timber Hill respectfully requests that the Court:

11  (i) appoint Timber Hill as lead plaintiff for the Derivatives Class; and (ii) approve

12  its selection of Entwistle & Cappucci and Susman Godfrey as Co-Lead Counsel for

13  the lead plaintiff and the Derivatives Class; and (iii) order the consolidation of any

14  subsequently filed, removed or transferred related actions on behalf of Allergan

15  derivatives investors under the caption *In re Allergan, Inc. Proxy Violation*

16  *Derivatives Litigation*, Case No.  2:17-cv-04776 DOC (KESx).

17

18  Dated: August 29, 2017            Respectfully submitted,

19                                    MARC M. SELTZER
                                      STEVEN G. SKLAVER
20                                    SUSMAN GODFREY L.L.P.

21                                    EDGAR G. SARGENT (*Pro Hac Vice*)
                                      esargent@susmangodfrey.com
22                                    SUSMAN GODFREY L.L.P.
                                      1201 Third Avenue, Suite 3800
23                                    Seattle, Washington 98101
                                      Telephone (206) 516-3880
24                                    Facsimile (206) 516-3883

25                                    ANDREW J. ENTWISTLE
                                      VINCENT R. CAPPUCCI
26                                    ARTHUR V. NEALON
                                      ROBERT N. CAPPUCCI
27                                    ENTWISTLE & CAPPUCCI LLP

28                            By:     */s/ Marc M. Seltzer*
                                      Marc M. Seltzer
                                      16

1

*Attorneys for Plaintiff Timber Hill LLC*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5294220v1/015666