MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA K. PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

ANDREW J. ENTWISTLE (Pro Hac Vice)
aentwistle@entwistle-law.com
VINCENT R. CAPPUCCI (Pro Hac Vice)
vcappucci@entwistle-law.com
ARTHUR V. NEALON (Pro Hac Vice)
anealon@entwistle-law.com
ROBERT N. CAPPUCCI (Pro Hac Vice)
rcappucci@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

[Additional Counsel for Plaintiff on Signature Page]

*Attorneys for Plaintiff Timber Hill LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION DERIVATIVES LITIGATION | Case No. 2:17-cv-04776 DOC (KESx)<br><br>The Hon. David O. Carter<br>Courtroom 9D<br><br>**CLASS ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION REGARDING THE ALLOCATION OF DAMAGES**<br><br>Date:   November 27, 2017<br>Time:   8:30 a.m.<br>Location:   Courtroom 9D |

5414770v1/015666

## I. INTRODUCTION

This motion addresses the Court's order directing the parties in *In re Allergan, Inc. Proxy Violation Securities Litigation*, Case No. CV 14-2004 DOC (KESx) ("*Basile*") and *In re Allergan, Inc. Proxy Violation Derivatives Litigation*, Case No. CV 17-4776 DOC (KESx) ("*Timber Hill*") to brief the manner in which damages awarded in *Basile* and *Timber Hill* should be allocated in light of the potential application of the limitation on damages awards provided by Section 20A of the Securities Exchange Act of 1934, 15 U. S C. section 78t-1 (Dkt. 39).

Lead Plaintiff Timber Hill, LLC brought this action, individually and on behalf of others who traded in derivative securities of Allergan Inc. ("Allergan") common stock (collectively, the "Derivatives Plaintiffs") against defendants William Ackman, Michael Pearson, Valeant Pharmaceuticals International, Inc. Pershing Square Capital Management L.P. and their various corporate affiliates. Derivatives Plaintiffs seek to recover their losses resulting from defendants' violation of the securities laws in connection with the unlawful purchase by Pershing Square Capital Management L.P. and its affiliates ("Pershing Square") of derivative securities of Allergan common stock while in possession of material non-public information regarding: (1) Valeant Pharmaceutical International Inc.'s ("Valeant") plan and scheme to acquire Allergan by means of a hostile takeover in 2014; and (2) Valeant's intention to pay a substantial premium for Allergan over and above its initial bid.

In both actions, defendants are alleged to have unlawfully purchased Allergan securities while in possession of material non-public information concerning Valeant's impending plans to make a takeover bid. In *Basile*, sellers of Allergan common stock have brought claims similar to those advanced by Derivatives Plaintiffs in *Timber Hill*. Defendants are thus alleged to have unlawfully purchased two separate categories of securities—derivative securities and common stock—as part of their scheme to illegally profit from inside

information about Valeant's secret plan to mount a hostile takeover of Allergan. These two separate class actions assert claims on behalf of persons who engaged in transactions in these different categories of securities.

The class definitions in the *Timber Hill* and *Basile* actions are mutually exclusive in that the *Timber Hill* action seeks to recover damages on solely on behalf of persons who traded in Allergan-related derivative securities during the period defendants were unlawfully purchasing Allergan related derivatives and the *Basile* action seeks to recover damages solely on behalf of the sellers of Allergan common stock during the period defendants were unlawfully purchasing Allergan common stock. The two class actions each seek, among other things, damages and disgorgement of defendants' profits realized from their unlawful transactions in securities pursuit to Section 20A—recovery of which is statutorily limited for each of the two categories of transactions to the profits realized by the defendants (i.e., the proceeds of the unlawful transactions, plus the amount earned by defendants on those proceeds until the date of judgment).

The calculation of the statutory cap for each of the two categories of transactions is a matter that may properly be determined by the Court in advance of the first scheduled trial with the participation of the parties in both the *Timber Hill* and *Basile* actions. This is particularly true where, as here, the questions to be decided are ones of statutory construction, where the amount of proceeds realized by defendants on their unlawful transactions is not materially in dispute, and where the calculation of the return earned by defendants on the proceeds from their unlawful transactions is easily calculated by the Court.

Derivatives Plaintiffs therefore suggest the following process for allocation and distribution of potential damages: (1) First, prior to the *Basile* trial, the Court determines the amount of the damages caps under Section 20A for the two categories of securities transactions. The Court will thereby determine the separate caps applicable to both cases. This approach will address defendants' concern they

may be made to pay twice because the aggregate of the two caps will equal, but not exceed, the total profits realized by defendants resulting from their transactions in both categories of unlawful securities transactions. In order to make such a determination, the parties in both the *Timber Hill* and *Basile* cases will brief the issue of how the Section 20A damages cap should be calculated. Following the briefing, the Court can hold a pre-trial hearing if deemed necessary by the Court. (2) Second, the juries in the *Basile* and *Timber Hill* trials will determine the amount of actual damages sustained by the separate classes in their respective trials. (3) Third, at the conclusion of the *Timber Hill* trial, the Court will enter separate final judgments—applying the applicable separate caps as may be required by the respective jury awards.

This approach ensures all parties have a right to be heard regarding the calculation of the damages cap while protecting defendants from the potential for inconsistent rulings as to the amount of the damages cap.

## II. LEGAL STANDARD

Questions of statutory interpretation lie within the "distinct and exclusive province of the trial judge." *Polanco v. E. Chigago Mach. Tool Corp.*, No. CV1108927MMM (MRWx), 2012 WL 12886210, at *4 (C.D. Cal. Sept. 18, 2012) (denying defendant's motion to dismiss). *See also Darby v. Century Bus. Servs., Inc.*, 96 F. App'x 277, 280 (6th Cir. 2004) (characterizing interpretation of PSLRA as a question of statutory interpretation).

## III. ARGUMENT

### A. The Calculation Of The PSLRA Damages Cap Is A Legal Issue To Be Decided By The Court

The determination of the Section 20A damages cap in these cases is a matter of statutory construction. Here, there are two class actions: *Basile*, involving sellers of Allergan common stock, and *Timber Hill*, involving traders in Allergan-related derivative securities, asserting claims arising out of the same alleged course

of conduct. The Court needs to determine the amount of defendants' profits for each category of transactions. Under Section 20A, damages "shall not exceed the profit gained or loss avoided [by the defendant]". 15 U.S.C. § 78t-1(b)(1).

We anticipate issues of statutory construction here may include resolution of defendants' argument to artificially reduce the extent of their liability by suggesting that Section 20A imposes a limitation based on profits realized after the public disclosure of the information at issue based on their contention that their profits should be calculated as of the date the truth was publicly disclosed. In applying the language of Section 20A, the Court may also be called upon to address the *Basile* plaintiffs' contention that the purchase of Allergan common stock by non-party issuers of call options and equity forward contracts required to fulfill the requirements of derivative contracts entered into during the Class Period should be deemed to be the purchase of common stock, which is included in the claims asserted in the *Basile* case. But this argument, if made, would be contrary to the class definition in the *Basile* case, which limits recovery to "all persons who **sold Allergan publicly traded common stock** from February 25, 2014 through April 21, 2014." Case No. CV 14-2004 DOC (KESx), Second Amended Complaint, Dkt. 138 (emphasis added). The *Basile* plaintiffs explicitly limited their class and claims to persons who seek damages incurred as a result of selling Allergan stock during the foregoing Class Period, and did not include claims based on transactions in derivative securities purchased by Pershing Square or the corresponding profits made on those transactions.

### B. Actual Damages Shall Be Calculated By the *Basile* and *Timber Hill* Juries

Once these threshold questions are decided by the Court, the *Basile* and *Timber Hill* juries can determine actual damages to be awarded to the respective classes in each case. Based on the class definition in *Basile*, plaintiffs in the *Basile* case will be limited to seeking damages that flow from sale of Allergan common

stock during the Class Period. Similarly, in the *Timber Hill* trial, the plaintiffs will be limited to damages that flow from transactions in derivative securities. Thus, the Section 20A damages caps for the *Basile* plaintiffs and *Timber Hill* plaintiffs should be mutually exclusive and can be calculated separately. By calculating the caps before the *Basile* trial, the Court can address defendants' concern about the possibility of conflicting verdicts as to the amount of the aggregate damages cap. The Court can also avoid the risk that either the *Basile* or *Timber Hill* plaintiffs would be deprived of their opportunity to be heard on the issue of the damages cap.

### C. Alternatively, Damages Could Be Allocated On A Pro Rata Basis

Alternatively, if the Court determines the Section 20A damages cap in the aggregate without determining defendants' profits separately realized on derivatives transactions and defendants purchases of common stock, damages could still be awarded in each case—albeit on a potentially less precise and equitable basis—by totaling and then reducing the total confirmed damages in both cases awarded in each case by the aggregate cap, assuming the total damages exceed the total cap, and then, if the total cap is exceeded, the Court would make a pro rata reduction of the each damages award according to the cap-reduced damages awarded in each case.[1]

For example, assuming for illustrative purposes that the damages cap is set at $2.5 billion based on all of defendants' illegal transactions in both categories of securities and the *Basile* jury awards damages in the amount of $3 billion and the *Timber Hill* jury awards damages in the amount of $3 billion, the jury awards would be reduced on a *pro rata* basis to $2.5 billion in total the *Basile* plaintiffs and the Derivatives Plaintiffs would each receive 50% of the reduced total amount of $2.5 billion. After allocating damages among both classes, then the Court would

---

[1] Given the amount of money at issue, it would be appropriate for the Court to order defendants to provide some method for securing the payment of any ultimate award of damages in both cases.

then enter separate final judgments in both cases in those amounts. *Willis v. Westin Hotel Co.*, 884 F.2d 1556, 1558 (2d Cir. 1989) (issuing final judgment after jury allocated damages for joint defendants).

## IV. CONCLUSION

For the foregoing reasons, Derivatives Plaintiffs respectfully request the Court to order the parties to submit further briefing in accordance with the foregoing proposal regarding the method for calculation of the Section 20A damages caps prior to the *Basile* and *Timber Hill* trials.

Dated: October 30, 2017

MARC M. SELTZER
STEVEN G. SKLAVER
KRYSTA K. PACHMAN
SUSMAN GODFREY L.L.P.

EDGAR G. SARGENT (*Pro Hac Vice*)
esargent@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone (206) 516-3880
Facsimile (206) 516-3883

ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
ARTHUR V. NEALON
ENTWISTLE & CAPPUCCI LLP

By /s/ *Marc M. Seltzer*
    Marc M. Seltzer

*Attorneys for Plaintiff Timber Hill LLC*