1   Mark Holscher (SBN 139582)
2   mark.holscher@kirkland.com
    KIRKLAND & ELLIS LLP
3   333 South Hope Street
    Los Angeles, California 90071
4   Telephone:   (213) 680-8400
5   Facsimile:   (213) 680-8500
    *Attorneys for Pershing Square Defendants*
6
7   John C. Hueston (SBN 164921)
8   jhueston@hueston.com
    HUESTON HENNIGAN LLP
9   523 West 6th Street, Ste. 400
    Los Angeles, California 90014
10  Telephone: (213) 788-4340
11  Facsimile:  (888) 775-0898
12  *Attorneys for Valeant Defendants*

13              **UNITED STATES DISTRICT COURT**
14              **CENTRAL DISTRICT OF CALIFORNIA**
                **SOUTHERN DIVISION—SANTA ANA**
15

16  IN RE ALLERGAN, INC. PROXY       )   Case Nos. 14-cv-2004-DOC (*Basile*) and
17  VIOLATION SECURITIES            )   17-cv-04776-DOC (*Timber Hill*)
    LITIGATION                      )
18  _____     )   Honorable David O. Carter
                                    )
19                                  )   CLASS ACTION
    TIMBER HILL LLC, individually and )
20  on behalf of all others similarly situated )
                                    )   **DEFENDANTS' NOTICE OF**
21          Plaintiff,             )   **MOTION AND MOTION**
                                    )   **REGARDING PROCESS FOR**
22      v.                          )   **ALLOCATION AND**
                                    )   **DISTRIBUTION OF POTENTIAL**
23  PERSHING SQUARE CAPITAL         )   **DAMAGES; MEMORANDUM OF**
24  MANAGEMENT, L.P., *et al.*       )   **POINTS AND AUTHORITIES IN**
                                    )   **SUPPORT THEREOF**
25          Defendants              )
                                    )   Date and Time: 11/27/2017, 8:30 a.m.
26                                  )
                                    )   Courtroom 9D
27                                  )
    _____     )
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE THAT**, on November 27, 2017 at 8:30 a.m., or the soonest date and time available to the Court thereafter, in courtroom 9D of the United States District Court for the Central District of California, located at 411 W. 4th Street, Santa Ana, California 92701, Defendants will and hereby do move for an order confirming that, as agreed by Timber Hill's counsel at the July 25, 2017 conference, a single damages cap shall govern in both the *Basile* and *Timber Hill* actions, which cap shall be decided in the *Basile* trial (assuming there is liability), and for such other related orders as the Court deems appropriate. This Motion is and will be based on this Notice of Motion and Motion, the Memorandum of Points and Authorities in Support Thereof, the Declaration of Jay Bhimani and exhibits thereto, any Reply, and any oral argument that may be presented at the hearing on this matter.

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on October 25, 2017. The parties were unable to reach agreement on the issues raised in the instant motion.

1   Dated: October 30, 2017                    Respectfully submitted,

2                                              KIRKLAND & ELLIS LLP

3                                              By: */s/ Mark Holscher*

4

5                                              Mark Holscher (SBN 139582)
                                               mark.holscher@kirkland.com
6                                              333 South Hope Street
                                               Los Angeles, CA 90071
7                                              Telephone: (213) 680-8400
                                               Facsimile: (213) 680-8500
8

9                                              -and-

10                                             KRAMER LEVIN NAFTALIS &
11                                             FRANKEL LLP
                                               John P. Coffey (*admitted pro hac vice*)
12                                             scoffey@kramerlevin.com
                                               Eileen M. Patt (*admitted pro hac vice*)
13                                             epatt@kramerlevin.com
                                               Seth F. Schinfeld (*admitted pro hac vice*)
14                                             sschinfeld@KRAMERLEVIN.com
                                               1177 Avenue of the Americas
15                                             New York, NY 10036
                                               Telephone: (212) 715-9100
16                                             Facsimile: (213) 715-8000
17

18                                             *Attorneys for Pershing Square Defendants*

19

20

21

22

23

24

25

26

27

28

1    Dated: October 30, 2017                 Respectfully Submitted,

2                                            HUESTON HENNIGAN LLP

3

4                                            By: */s/ John C. Hueston*

5                                            John C. Hueston (SBN 164921)

6                                            jhueston@hueston.com
                                             Moez M. Kaba (SBN 257456)

7                                            mkaba@hueston.com

8                                            Steven N. Feldman (SBN 281405)
                                             sfeldman@hueston.com

9                                            620 Newport Center Drive, Suite 1300

10                                           Newport Beach, CA 92660
                                             Telephone: (949) 229-8640

11                                           Facsimile:  (888) 775-0898

12                                           *Attorneys for Valeant Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

### I.   INTRODUCTION

On July 25, 2017, the Court held a status conference to discuss the potential consolidation of the *Timber Hill* and *Basile* actions. During that conference, the Court asked how the statutory damages cap that applies across both actions would be determined if there were separate, sequential trials. In responding to this question, both sets of plaintiffs *agreed* that damages would be "reduce[d] . . . proportionately so that the total payment the defendants make is their full profit under the [damages cap]." Timber Hill's counsel further agreed that, if there were separate trials and no consolidation, the cap "*can easily be determined by whichever jury hears the case first.*" After considering these positions, the Court declined to order consolidation.

The Court then set a deadline for the parties to file motions setting forth their "proposals for how to structure the allocation of potential damages [across the two actions] in light of the applicable damages cap." Defendants' proposal is straightforward. First, the Court should grant Defendants' partial summary judgment motion and hold that, under the undisputed facts, the statutory maximum cap must be set with reference to the price of Allergan stock on a date no later than June 2, 2014. From that point, the Court should adopt the proposal advanced by both sets of plaintiffs during the July 25 status conference. Specifically, if necessary after the pending summary judgment motions are resolved, the jury in the *Basile* case decides (a) liability; (b) the applicable damages cap (no greater than the undisputed maximum set through summary judgment); and (c) the actual damages, if any, suffered by the *Basile* class. The jury in the *Timber Hill* case then decides the actual damages, if any, suffered by the *Timber Hill* class. If the aggregate damages from both classes total more than the cap, they then must be reduced proportionately in accordance with the

1    cap determined in *Basile*.[1] Based on the conference of counsel that preceded the filing

2    of this motion, however, it appears that Timber Hill's counsel has taken back his

3    agreement to this procedure, which, in turn, may require a different approach to the

4    issue of allocating damages, if any, under the applicable cap.

5            If Plaintiffs now disagree and the Court does not otherwise order that a single

6    damages cap applies across both cases, Defendants respectfully request that the Court

7    reconsider its prior ruling on consolidation in order to avoid the risk of inconsistency,

8    possible prejudice to Defendants, and a waste of resources. The Court's decision not

9    to consolidate the *Basile* and *Timber Hill* cases for trial was premised on the

10   understanding—based on Timber Hill's counsel's statements to the Court—that there

11   would be a single damages cap across the cases, determined "easily" by "whichever

12   jury hears the case first." If that rule does not hold, separate trials are untenable.

13   Multiple trials with different potential caps would be deeply prejudicial to Defendants,

14   practically unmanageable, and risk inconsistent jury verdicts on a factual issue that

15   can only have one answer. The cap is set at Defendants' "profits gained" in the

16   transaction through the time when the alleged material information relating to a tender

17   offer became public.[2] There is only one transaction at issue across the cases and

18

19

20           [1]   For example, assume *arguendo* that the Court finds that the undisputed
     evidence merits a cap no higher than $125, but the *Basile* jury resolves disputes in the
21   evidence and renders a verdict that the actual cap is only $100. Assume also that the
     *Basile* jury determines the actual damages for the *Basile* class are $100, and the
22   *Timber Hill* jury determines the actual damages for the *Timber Hill* class are $300. In
     that case, the *Basile* class will receive $25 and the *Timber Hill* class $75.
23
             [2]   Plaintiffs have asserted that an exchange offer was inevitable as part of an
24   unsolicited merger proposal made on April 22, 2014. Certainly, no material
     information relating to a tender offer could have remained undisclosed following the
25   parties' public announcement on June 2, 2014 that they intended to launch an
     exchange offer. On this basis, Defendants have sought summary judgment that, among
26   other things, the statutory cap should be set with reference to a date no later than June
     2, 2014. *See* ECF No. 394 (Valeant Mot. for Summ. J.) at 24–25.
27

28

1  therefore only one set of profits. Thus, the cap should be decided in one proceeding—

2  as Plaintiffs' counsel recognized at the July 25 conference.

3        Finally, if the Court does not rule that a single cap governs, and does not revisit

4  consolidation, the cap amounts in each case should be set with reference to the type of

5  security traded. The *Basile* class is comprised of investors who sold Allergan common

6  stock during the Class Period. Thus, Defendants' liability to the *Basile* class should be

7  capped at the "profits gained" from Defendants' purchases of common stock, which

8  occurred on February 25 and 26, 2014. Likewise, the *Timber Hill* class is comprised

9  of investors who traded Allergan derivative securities during the Class Period.

10  Defendants' liability to the *Timber Hill* class should therefore be capped at the "profits

11  gained" from Defendants' purchases of derivative securities, which occurred during

12  the remainder of the Class Period. Taken together, the two caps would constitute the

13  entire "profits" that Defendants gained in the transaction as a whole. Dividing the

14  determination as between stock and derivatives would be the only way—absent

15  consolidation, or the application of a single cap determined in one trial—to avoid the

16  risk of inconsistent verdicts as to the full cap amount.

17  **II.    BACKGROUND**

18        The *Basile* action[3] was filed on December 16, 2014,[4] on behalf of a class of

19  investors who sold Allergan, Inc. common stock during the alleged Class Period.[5] The

20  *Timber Hill* action was filed on June 28, 2017, and brings the same claims, against the

21  same Defendants, based on the same facts during the same Class Period.[6] The only

22  difference is that the *Timber Hill* action is brought on behalf of a putative class of

23  investors who traded "certain Allergan, Inc. . . . . derivative securities," rather than

---

24     [3]    The *Timber Hill* action is No. 17-cv-04776 (C.D. Cal.). The *Basile* action is No.

25  14-cv-2004-DOC (C.D. Cal.). References to "*Timber Hill* ECF No." and "*Basile* ECF

26  No." are to ECF filings in the respective actions.

   [4]    *Basile* ECF No. 1.

27     [5]    *Id.* ¶ 1.

28     [6]    *See generally Timber Hill* ECF No. 1.

1   Allergan common stock.[7] On July 12, 2017, the Court *sua sponte* set a July 25, 2017

2   status conference "to discuss consolidation of the two cases."[8]

3          At the July 25, 2017 conference, the parties and the Court discussed at length

4   how damages would be allocated, both if there were a single, consolidated trial, or

5   separate trials that proceeded sequentially. Specifically, the parties discussed how the

6   statutory damages cap that applies across both actions would operate in each context.[9]

7   Were there a single, consolidated trial, all parties agreed that there would be a single

8   damages cap set by a jury in the consolidated trial.[10]

9          With respect to separate, sequential trials, the Court asked as follows—

10  "[A]ssume for a moment now that it's a consecutive trial. Common [stock class in

11  *Basile*] goes first on the date that's set, hypothetically, and that [] will be followed

12  sometime by the derivative group [in *Timber Hill*]. How do I sort that out?"[11] Counsel

13  for the *Basile* plaintiffs responded first, explaining that the separate juries would

14  render a verdict on each class's actual damages, to be "reduce[d] . . . proportionately

15  so that the total payment the defendants make is their full profit under the [damages

16

17

18  _____

19      [7]   *See id.* at 1.
        [8]   *Timber Hill* ECF No. 25.

20      [9]   Defendants' total liability is limited to their "profit gained . . . in the transaction
        or transactions that are the subject of the violation." 15 U.S.C. § 78t–1(b)(1); *see*

21  *generally Basile* ECF No. 394 at 24 (describing applicable damages cap).

22      [10]  Pershing Square's counsel explained that "the jury [in a single consolidated
        trial] will award a *pro rata* share for Class A and Class B to set the parameters for

23  allocation." Bhimani Decl. Ex. A at 66:9-11 (7/25/17 Hr'g Tr., Vol. I). Timber Hill's

24  counsel's position was "consistent with what the defendants described; namely, there
        would be a lump sum award for each class" to be decided by a single jury in a

25  consolidated trial. *Id.* at 69:3-6. The *Basile* plaintiffs' suggestion was consistent too:
        "I think anytime . . . collective damages for both classes exceed the cap, I think your

26  Honor would then reduce both judgments proportionately so that the amount paid out

27  by defendants is the cap." *Id.* at 76:10-13.
        [11]  Bhimani Decl. Ex. B at 12:4-7 (7/25/17 Hr'g Tr., Vol. II).

28

1    cap].”[12] As to what cap would apply in the *Timber Hill* trial—which would proceed

2    after the *Basile* trial—Timber Hill's counsel was crystal clear:

> 3    Your Honor, responding directly to your question, I think that [the *Basile*
> 4    plaintiffs' counsel] has it right. If there are sequential trials, then the jury
> in their case would reach a verdict as to damages. I happen to, personally,
> 5    think that the issue of the cap is statutory and so that there isn't really
> much of a question about how you calculate that as a whole. So I think,
> 6    you know, under the -- **under [Section 20A, which sets the damages**
> 7    **cap], it's the disgorgement of profits or the avoided losses, plus**
> **prejudgment interest in an amount that relates to what the effective**
> 8    **return on investment would be. And that can easily be determined by**
> 9    **whichever jury hears the case first.** (emphasis added)[13]

10        After considering the parties' respective positions, including Timber Hill's

11    counsel's statement that a cap in the *Timber Hill* action could "easily be determined

12    by whichever jury hears the case first," the Court ultimately did not order

13    consolidation.[14]

14        On July 27, 2017, the Court set an October 30, 2017 deadline "for motions

15    regarding the process for allocation and distribution of potential damages," in which

16    the parties were to set forth their "proposals for how to structure the allocation of

17    potential damages in light of the applicable damages cap."[15] In the meet and confer

18    process that preceded the October 30, 2017 deadline, Defendants' counsel asked

19    Timber Hill's counsel to confirm that Timber Hill stood by the statements of its

20    counsel during the July 25, 2017 conference—specifically, that "the Timber Hill

21    Plaintiffs intend to stipulate that they will be bound by the damages cap that is

22    determined in the *Basile* action."[16] In an about-face from the position previously

23    conveyed to the Court, Timber Hill's counsel responded that "Timber Hill does not

24

25    ———————————

[12]  *Id.* at 13:3-5.

26    [13]  *Id.* at 13:12-22.

[14]  *Id.* at 13:22; Bhimani Decl. Ex. C at 8:10-23 (7/25/17 Hr'g Tr., Vol. III).

27    [15]  *Timber Hill* ECF No. 39 at 2.

28    [16]  Bhimani Decl. Ex. D at 2 (E-mail from Feldman to Pachman) (10/17/17).

1    agree to be bound by a jury finding as to the damages cap in the *Basile* trial and

2    otherwise reserves all rights."[17]

3    **III.    ARGUMENT**

4            **A.      A Single Cap Should Apply To Both The *Basile* And *Timber Hill*
                        Actions, With *Pro Rata* Distribution Of Damages In Each Case Up

5                       To The Cap Amount.**

6            The July 27, 2017 Order asked the parties to set forth their "proposals for how

7    to structure the allocation of potential damages in light of the applicable damages

8    cap."[18] In their summary judgment papers, Defendants have argued that the cap should

9    be set with reference to a date no later than June 2, 2014.[19] If it must be determined

10   where the relevant date falls before then, Defendants' proposal is as follows:

11          • The jury in the *Basile* case will decide liability and, assuming it finds
              liability,[20] the applicable damages cap;

12

13          • The damages cap, as determined by the *Basile* jury, will be preclusive in a
              trial in *Timber Hill*;

14

15          • The juries in the *Basile* and *Timber Hill* actions will each decide, separately,
              the actual losses suffered by the *Basile* and *Timber Hill* classes; and

16

17          • If total damages proven at the two trials exceed the cap as determined in the
              first trial, then recovery for each class would be calculated *pro rata* to actual

18            damages by dividing the cap amount by the total recovery from both classes,
              and then multiplying the resulting ratio by each class's proven damages.

19

20          For example, assume that the *Basile* jury determines that Defendants are liable

21   and that their "profits gained" in the transaction are $10 million. It also finds that the

22   *Basile* class proved $20 million in actual damages. In a subsequent trial in *Timber*

23   *Hill*, a jury finds that the *Timber Hill* class proved $60 million in actual damages. The

24   ─────────────
     [17]  *Id.* at 1.

25   [18]  *Timber Hill* ECF No. 39 at 2.

     [19]  *See Basile* ECF No. 394 (Valeant Mot. for Summ. J.) at 24–25.

26   [20]  If there is no liability in *Basile*, the single damages cap will of course be
     decided in *Timber Hill*. As this motion addresses the "allocation and distribution of

27   potential damages" (*Timber Hill* ECF No. 39 at 2), Defendants take no position herein

28   on the effect of a liability finding in the *Basile* action on the *Timber Hill* action.

1    *Timber Hill* jury would not make findings on a separate cap, as the *Basile* cap would

2    apply in *Timber Hill*. The cap-to-damages ratio would be 0.125 ($10 million divided

3    by $80 million). So the *Basile* class would recover $2.5 million (0.125 times $20

4    million) and the *Timber Hill* class would recover $7.5 million (0.125 times $60

5    million). The *Basile* recovery plus the *Timber Hill* recovery would equal the cap.

6         This approach is what both sets of plaintiffs advocated at the July 25, 2017

7    conference—each class's actual damages, assuming there is liability, are "reduce[d] . .

8    . proportionately so that the total payment the defendants make is the full profit under

9    the [damages cap]," with the cap amount "easily determined by whichever jury [here,

10   the *Basile* jury] hears the case first."

11        Employing a single, binding damages cap protects Defendants from the unduly

12   prejudicial risk of inconsistent verdicts. The damages cap limits Defendants' liability

13   to their "profit gained . . . *in the transaction* or transactions that are the subject of the

14   violation." 15 U.S.C. § 78t-1(b)(1) (emphasis added); *see also Gordon v. Sonar*

15   *Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 203 (S.D.N.Y. 2015), *appeal withdrawn*

16   (July 14, 2015) (the purpose of the damages cap is to limit "defendant's liability at its

17   total profits and avoided losses minus any disgorgement to the Securities and

18   Exchange Commission.").

19        There is only one "transaction" at issue across both cases. Defendants made one

20   amount of "profits" in that transaction. There is simply no reason to have *two juries*

21   decide the cap amount. To the contrary, courts must take care to avoid inconsistent

22   verdicts. *See, e.g., Morgan v. Napolitano*, 2012 WL 4755034, at *2 (E.D. Cal. Oct. 4,

23   2012) (ordering consolidation as "[t]wo trials would [ ] present a significant risk of

24   inconsistent verdicts"); *Hardy v. AdvoCare Int'l., L.P.*, 2010 WL 11509179, at *5

25   (C.D. Cal. Dec. 10, 2010) (no transfer of case where "[k]eeping the present action in

26   this Court [along with a related action] will promote judicial economy and avoid the

27   risk of inconsistent verdicts"); 9A Charles Alan Wright & Arthur R. Miller, *Federal*

28

*Practice and Procedure* § 2383 (3d ed.) (risk of inconsistent verdicts is a factor when determining whether trials should be consolidated) (collecting cases).

**B.     If Plaintiffs Will Not Agree—And The Court Does Not Order—That A Single Cap Governs, It Should Revisit Consolidation Of The Actions Or Fix Caps That Depend On Security Type.**

If, as Timber Hill's counsel originally represented, all Plaintiffs agree that a jury finding on the cap in a "first" trial binds everyone in both actions, that agreement will, in fact, make the finding binding. *See* Restatement (Second) of Judgments § 40 (1982) ("A person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement."); *see also Taylor v. Sturgell*, 553 U.S. 880, 893–94 (2008).

But if Plaintiffs will *not*—contrary to what they said in Court—agree, it is far less clear whether Timber Hill can be precluded from litigating a cap amount decided in a *Basile* trial to which it is not a party. *See generally United States v. Brown*, 761 F.2d 1272, 1276 (9th Cir. 1985). When the Court declined to order consolidation at the July 25, 2017 status conference, it did so with the understanding—based on Timber Hill's counsel's statements to the Court—that a single damages cap could "easily be determined by whichever jury hears the case first." If Timber Hill is permitted to reverse its position in this regard, a significant premise of the denial of consolidation is no longer true. If that is the case, the risk of inconsistent verdicts on the cap will severely prejudice Defendants, lead to intractable case management complexities, and potentially undermine public confidence in the judicial system. *See, e.g., Finder v. Leprino Foods Co.*, 2016 WL 6875259, at *3 (E.D. Cal. Nov. 21, 2016) ("When consolidation of two class actions can be accomplished such that a single trial can be held, scarce judicial resources are conserved."); *Decker v. Persson*, 2015 WL 7069662, at *2 (D. Or. Nov. 13, 2015) (explaining that "[i]nconsistent verdicts may undermine public confidence in the judicial system").

Thus, if Plaintiffs are no longer willing to agree to (and the Court finds it is unable to order) that a single cap applies, these new circumstances merit revisiting

-8-

consolidation. Indeed, the risk of inconsistent verdicts is an obvious factor that courts should consider when determining whether to order consolidation. *See, e.g., Finder*, 2016 WL 6875259, at \*5 (considering "the interests of judicial economy and avoidance of inconsistent outcomes" in ordering consolidation); *Morgan*, 2012 WL 4755034, at \*2 (same); 9A Fed. Prac. & Proc. Civ. § 2383 (collecting cases).

Finally, if the Court is not inclined to adopt a single damages cap or order consolidation, it should fix the damages caps in both cases with reference to the type of security traded. This is the only other way to mitigate the risk of inconsistent verdicts as to the full cap amount. Specifically, as the Court is aware, Defendants traded two broad types of securities: (a) Allergan common stock; and (b) Allergan-related derivative instruments. The *Basile* class is comprised of investors who sold Allergan common stock. The *Timber Hill* class is comprised of investors who traded Allergan-related derivative instruments. Accordingly, absent consolidation or the use of a single cap amount, the *Basile* jury should decide the "profits" that Defendants gained on account of their purchases of Allergan common stock, which occurred on February 25 and 26, 2014, and Defendants' liability to the *Basile* class should be limited to such amount. Likewise, the *Timber Hill* jury should decide the "profits" that Defendants gained on account of their purchases of Allergan derivatives, which occurred during the remainder of the Class Period, and Defendants' liability to the *Timber Hill* class should be limited to that amount. Taken together, the caps in each case will equal the full amount of the "profits" that Defendants gained in the transaction overall. Dividing the determination in this way would further protect against two juries reaching inconsistent verdicts as to the total cap amount.

## IV.    CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion and order that a single damages cap applies across both the *Timber Hill* and *Basile* actions, with damages, if any are proven and if totaling more than the cap, in each case reduced proportionately in light of the cap. If the Court is not inclined to enter such an order,

1    Defendants respectfully request that the Court either revisit its prior decision declining

2    to order consolidation of the two cases, or require the use of security-specific caps in

3    each action.

4

5    Dated: October 30, 2017               Respectfully submitted,

6                                     KIRKLAND & ELLIS LLP

7

8                                     By: */s/ Mark Holscher*

9                                     Mark Holscher (SBN 139582)

10                                mark.holscher@kirkland.com

                                   333 South Hope Street

11                              Los Angeles, CA 90071

                                   Telephone: (213) 680-8400

12                            Facsimile: (213) 680-8500

13

                                   -and-

14

15                              KRAMER LEVIN NAFTALIS &
                                   FRANKEL LLP

16                            John P. Coffey (*admitted pro hac vice*)

                                   scoffey@kramerlevin.com

17                            Eileen M. Patt (*admitted pro hac vice*)

18                            epatt@kramerlevin.com

                                   Seth F. Schinfeld (*admitted pro hac vice*)

19                            sschinfeld@KRAMERLEVIN.com

20                            1177 Avenue of the Americas

                                   New York, NY 10036

21                            Telephone: (212) 715-9100

22                          Facsimile: (213) 715-8000

23                            *Attorneys for Pershing Square Defendants*

24

25

26

27

28

| | |
|---|---|
| 1 | Dated: October 30, 2017 |
| 2 | |
| 3 | |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

Respectfully Submitted,

HUESTON HENNIGAN LLP

By: */s/ John C. Hueston*

John C. Hueston (SBN 164921)
jhueston@hueston.com
Moez M. Kaba (SBN 257456)
mkaba@hueston.com
Steven N. Feldman (SBN 281405)
sfeldman@hueston.com
620 Newport Center Drive, Suite 1300
Newport Beach, CA 92660
Telephone: (949) 229-8640
Facsimile:  (888) 775-0898

*Attorneys for Valeant Defendants*