1   MARC M. SELTZER (54534)
    mseltzer@susmangodfrey.com
2   STEVEN G. SKLAVER (237612)
    ssklaver@susmangodfrey.com
3   KRYSTA K. PACHMAN (280951)
    kpachman@susmangodfrey.com
4   SUSMAN GODFREY L.L.P.
    1901 Avenue of the Stars, Suite 950
5   Los Angeles, CA  90067-6029
    Telephone:  (310) 789-3100
6   Facsimile:  (310) 789-3150

7   ANDREW J. ENTWISTLE (Pro Hac Vice)
    aentwistle@entwistle-law.com
8   VINCENT R. CAPPUCCI (Pro Hac Vice)
    vcappucci@entwistle-law.com
9   ARTHUR V. NEALON (Pro Hac Vice)
    anealon@entwistle-law.com
10  ROBERT N. CAPPUCCI (Pro Hac Vice)
    rcappucci@entwistle-law.com
11  ENTWISTLE & CAPPUCCI LLP
    299 Park Avenue, 20th Floor
12  New York, NY  10171
    Telephone:  (212) 894-7200
13  Facsimile:  (212) 894-7272

14  [Additional Counsel for Plaintiff on Signature Page]

15  Attorneys for Plaintiff Timber Hill LLC

16                  UNITED STATES DISTRICT COURT

17                 CENTRAL DISTRICT OF CALIFORNIA

18                       SOUTHERN DIVISION

| | |
|---|---|
| 19  IN RE ALLERGAN, INC. PROXY VIOLATION SECURITIES LITIGATION | Case No.  8:14-cv-02004-DOC (*Basile*)  2:17-cv-04776 DOC (*Timber Hill*) |
| 20 | |
| 21 | The Hon. David O. Carter |
| 22 | <u>CLASS ACTION</u> |
| 23  IN RE ALLERGAN, INC. PROXY VIOLATION DERIVATIVES LITIGATION | **PLAINTIFF TIMBER HILL'S OMNIBUS MEMORANDUM OF POINTS AND AUTHORITIES IN RESPONSE TO COMMON STOCK PLAINTIFFS' SUBMISSION CONCERNING THE PROCESS FOR ALLOCATION OF DAMAGES AND DEFENDANTS' MOTION REGARDING PROCESS FOR ALLOCATION AND DISTRIBUTION OF POTENTIAL DAMAGES** |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | Date:       November 27, 2017  Time:       8:30 a.m.  Location:  Courtroom 9D |

## **TABLE OF CONTENTS**

I.   THE SECTION 20A DAMAGES CAPS SHOULD BE
     DETERMINED AS A MATTER OF LAW ......................................................2

     A.   Two Damages Caps Are Appropriate .....................................................2

     B.   The Section 20A Damages Caps Can Be Determined By A
          Simple Calculation As A Matter Of Law Before The First Trial ........3

     C.   Timber Hill Should Not Be Bound By Any Cap Based On
          Defendants' Motion For Summary Judgment Because Timber
          Hill Did Not Participate In That Motion And Because
          Defendants Apply The Incorrect Legal Standard On That Issue..........4

          1.   As A Matter Of Law, Liability Is Capped At Defendants'
               Actual Profits, Which Are Undisputed .......................................5

          2.   The Ninth Circuit Looks To The Defendants' Actual
               Profits Where Wrongfully Obtained  Securities
               Appreciate After The Fraud Concludes ......................................6

          3.   Defendants Propose An Untenable Statutory
               Interpretation.............................................................................7

     D.   Timber Hill Never Agreed To Be Bound By A Finding In Basile .......9

     E.   The Court Never Ruled That Common Stock Plaintiffs Are
          Entitled To Defendants' Profits On Derivatives Trades.....................10

II.  IF THE COURT ADOPTS A SINGLE-CAP APPROACH,  THE
     AMOUNT OF THE JUDGMENTS TO BE ENTERED SHOULD
     NOT BE DECIDED UNTIL AFTER BOTH TRIALS CONCLUDE..........11

III. CONSOLIDATION IS ONLY APPROPRIATE IF THE COURT
     SETS A SEPARATE CAP FOR EACH CASE BEFORE THE FIRST
     TRIAL.........................................................................................................13

CONCLUSION...................................................................................................14

# **TABLE OF AUTHORITIES**

**Federal Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012) ..................................................................12

*Affiliated Ute Citizens of Utah v. United States*,
    406 U.S. 128 (1972) .............................................................................6

*ASSE Int'l, Inc. v. Kerry*,
    803 F.3d 1059 (9th Cir. 2015)..............................................................9

*Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427 (9th Cir. 1991) ............8

*Elkind v. Liggett & Myers*,
    635 F.2d 156 (2d Cir. 1980) ...........................................................7, 12

*Goldberg v. Kelly*,
    397 U.S. 254 (1970) .............................................................................9

*Grannis v. Ordean*,
    234 U.S. 385 (1914) .............................................................................9

*In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*,
    No. 09 MD 2058 (PKC) (S.D.N.Y. May 4, 2015) ..........................................12

*In re Citigroup Inc. Bond Litig.*,
    No. 08 Civ. 9522 (SHS) (S.D.N.Y. Aug. 1, 2014).........................................12

*In re Wachovia Preferred Sec. & Bond/Notes Litig.*,
    No. 09 Civ. 6351 (RJS) (S.D.N.Y. Jan. 2, 2014) .........................................12

*J. I. Case Co. v. Borak*,
    377 U.S. 426 (1964) ..........................................................................2, 3

*Jackson v. Federal Express*,
    766 F.3d 189 (2d Cir. 2014) ...............................................................11

*Nelson v. Serwold*,
    576 F.2d 1332 (9th Cir. 1978)............................................................6, 7

*Plaine v. McCabe,*
      797 F.2d 713 (9th Cir. 1986).................................................................2

*Standard Fire Ins. Co. v. Knowles,*
      568 U.S. 588 (2013) .....................................................................10

*Taylor v. Sturgell,*
      553 U.S. 880 (2008) .......................................................................9

*United States v. 144,774 pounds of Blue King Crab*, 410 F.3d 1131 (9th Cir. 2005)8

**Statutes**

15 U.S.C. § 78t-1 .......................................................................................2

15 U.S.C. § 78t-1(b)(1).............................................................................3

**PRELIMINARY STATEMENT**

As set forth in the motion filed by plaintiff Timber Hill LLC, it is respectfully submitted that the Court should determine the amount of defendants' profits realized from their Allergan common stock and derivatives securities transactions as a matter of law before the trial in the *Basile* case. To assist the Court, the parties in each action should be ordered to submit their proposed calculation of defendants' profits derived from their transactions in these two types of securities. The Court would then be in a position to apply separate caps on the damages that may be awarded in the respective class actions (the "two-cap" approach).

The profits from defendants' common stock transactions should flow to plaintiffs who sold shares of Allergan common stock during the Class Period. The profits from defendants' derivatives securities transactions should flow to plaintiffs who engaged in derivatives securities transactions. Defendants agree that establishing the two separate caps is an acceptable approach.[1] Common stock plaintiffs, by contrast, support a single limitation of damages to be decided by the jury in the *Basile* case yet applied to both cases (the "one-cap" approach). The two-cap approach is superior to the one-cap approach because it avoids potential complications regarding the calculation and pro-rating of damages that may be awarded in both cases. It is also more consistent with the two-case, two-class structure of this litigation and with Section 20A of the Securities Exchange Act of 1934 (the "1934 Act") because it applies separate caps to profits on stock transactions flowing to stock plaintiffs and profits on derivatives transactions flowing to derivatives plaintiffs.

_____

[1] *See* Defendants' Motion Regarding Process Of Allocation And Distribution Of Potential Damages (*Timber Hill* Docket No. 68 at 3).

1

1    For their part, defendants want: (1) the Court to set a "maximum cap" based
2  on their summary judgment motion in *Basile*; then (2) argue to the jury in *Basile* for
3  an even lower cap; and then (3) to bind the derivatives plaintiffs to the *Basile* jury's
4  finding on the cap. The other parties advance the argument that Timber Hill
5  somehow agreed to this process, but this contention is not supported by the record
6  when fairly read.

7  **I.    THE SECTION 20A DAMAGES CAPS SHOULD BE DETERMINED**
8  **AS A MATTER OF LAW**

9    A.   **Two Damages Caps Are Appropriate**

10   There are two cases before the Court, each involving different types of
11 securities. Profits from each type of transaction should flow to harmed investors
12 who traded in the same types of securities. *See* 15 U.S.C. § 78t-1(a) (referring to
13 "any person who, contemporaneously with the purchase or sale of securities that is
14 the subject of such violation, has purchased (where such violation is based on a sale
15 of securities) or sold (where such violation is based on a purchase of securities)
16 *securities of the same class*.") (emphasis added). The determination of the amount
17 of separate damages caps applicable to each case will avoid the possibility of
18 inconsistent results, and will avoid the potential complexities related to the
19 application of any proposed pro-rata methodology. Establishing two separate caps
20 would be fair to defendants, as they acknowledge, because the profits realized from
21 the two broad types of securities transactions cannot exceed the total profits
22 defendants realized based on their alleged violation of Section 14.[2]

23  _____

24 [2] It should be noted that damages recoverable under Section 14(e) of the 1934 Act
25 are not limited to out-of-pocket damages. *See Plaine v. McCabe*,
   797 F.2d 713, 721-22 (9th Cir. 1986) ("damages awarded a successful section 14(e)
26 plaintiff . . . may go beyond a determination of a 'fair price,'" including damages
27 under the out-of-pocket, benefit of the bargain, or some other appropriate standard).
   Indeed, the Supreme Court held in the seminal case of *J. I. Case Co. v. Borak*, 377
28 U.S. 426 (1964), that federal courts have great flexibility in fashioning remedies for

2

The Court should order the profits realized on transactions in the two types of securities to be separately limited in each case for the additional reason that prejudgment interest (or defendants' return on investment) runs until the date of judgment, and judgment may enter in one action before the other. If the Court were to adopt the common stock plaintiffs' proposal to use a one-cap approach, judgment should not be entered in either case until after the conclusion of both trials so that prejudgment returns/interest can be calculated consistently.

**B.     The Section 20A Damages Caps Can Be Determined By A Simple Calculation As A Matter Of Law Before The First Trial**

The damages available under Section 20A are limited by the statute itself to "the profit gained or loss avoided in the transaction or transactions that are subject of the violation."[3] Here, the total amount of the profits gained in the derivative securities transactions at issue are readily calculated as follows:

- the total amount received by defendants on the sale of their shares in the merger with Actavis (not in dispute -- $219 per share);
- **plus** dividends received after exercise (not in dispute);
- **less** the total amount paid for the option and the exercise price paid (not in dispute).

---

violation of Section 14 of the 1934 Act. The Supreme Court there held that the language of Section 27 of the 1934 Act is "entirely sufficient to fashion a remedy to rescind a fraudulent sale, secure restitution and even to enforce the right to restitution against a third party holding assets of the vendor." *Id.*; 377 U.S. at 433 (citation omitted).

[3] 15 U.S.C. § 78t-1(b)(1) ("The total amount of damages imposed under subsection (a) shall not exceed the profit gained or loss avoided in the transaction or transactions that are the subject of the violation.")

Profits on defendants' common stock transactions can be calculated with a modified version of this formula that uses the longer relevant period for dividends paid and omits the exercise price.

Defendants have implicitly conceded -- by moving for summary judgement on this point -- that the Section 20A damages caps can be determined as a matter of law. (*Basile* Docket No. 394 at 24-25, 558 at 2 n. 1, 6; *Timber Hill* Docket No. 68 at 2 n. 1, 6.) Defendants suggest that the Court should set a "maximum cap," but that the jury then be permitted to find a lower cap. (*Id.*) This hypothetical jury finding in the context of a "one-cap" approach appears to be the source of defendants' stated concern about the potential for inconsistent verdicts. But defendants offer no basis upon which a reasonable jury could find profits to be even lower than defendants suggest. As discussed in the next section, defendants apply the wrong legal standard for the calculation of their profits. That question of law can be decided now: are defendants' damages under Section 20A limited to defendants' actual profits based on the prices they actually paid and then received for the securities, or are damages limited to hypothetical profits set by reference to the market price set at some time while defendants held the securities?  The plain language of the statute makes clear that it is the total profit gained and not some lower hypothetical amount.

**C.**   **Timber Hill Should Not Be Bound By Any Cap Based**
         **On Defendants' Motion For Summary Judgment Because**
         **Timber Hill Did Not Participate In That Motion And Because**
         **Defendants Apply The Incorrect Legal Standard On That Issue**

In their motion on allocation and distribution of damages, defendants ask the Court to set a "maximum cap" based on their summary judgment briefing in *Basile*, and for the jury in the *Basile* case to determine a potentially lower cap applicable to both sets of plaintiffs. (*Timber Hill* Docket No. 68 at 6; *Basile* Docket No. 558 at 6.) Timber Hill did not participate in that summary judgment motion practice (or in

4

1   any discovery before the motion was made). Derivatives plaintiffs should not be
2   bound by the Court's decision on that motion because this would deprive them of
3   their due process right to be heard. It would also be unfair and potentially
4   prejudicial to the derivative plaintiffs to be bound by the jury's findings in *Basile*.
5   Furthermore, defendants advance, and the common stock plaintiffs apparently
6   accept, an approach to the calculation of profits that is contrary to law.

### 1.   As A Matter Of Law, Liability Is Capped
### At Defendants' Actual Profits, Which Are Undisputed

9       Contrary to defendants' arguments on summary judgment in *Basile*, the
10  timing of the release of previously withheld information has no bearing on the
11  calculation of defendants' actual profits. Therefore, it does not matter, for purposes
12  of the Section 20A damages caps, *when* after the class period all of the previously
13  withheld information had been disclosed.[4] The statute limits liability to defendants'
14  profits, which, as a matter of law, include the continued appreciation of the value of
15  Allergan securities plus the amounts defendants thereafter earned on their realized
16  profits.[5] Conspicuously, defendants cite no authority for the proposition that profits
17  realized after the public disclosure of previously withheld information should be, *or*
18  *have ever been*, excluded from the calculation of a damages cap.

19      Common stock plaintiffs have apparently made the strategic decision to
20  oppose this part of defendants' summary judgment motion not on its legal
21  inadequacy but rather on factual grounds. They argue that they can prove at their
22  trial that the information in question was not fully disclosed until November 17,

23  _____

24  [4] The burden appropriately lies with defendants to establish that their actual profits
25  are less than the plaintiffs' losses.

26  [5] Plaintiffs are also entitled to disgorgement of defendants' return on their
27  reinvestment of the proceeds of their sale of Allergan securities from March 17,
    2015 until judgment enters.
28

2014 (when the per-share price was $209). (*Basile* Docket No. 467-1 at 38.) But that factual question is not relevant to the calculation of the damages caps.[6]

### 2. The Ninth Circuit Looks To The Defendants' Actual Profits Where Wrongfully Obtained Securities Appreciate After The Fraud Concludes

Defendants (and common stock plaintiffs) appear to conflate proof of losses with calculation of profits. But the calculation of a defendant's profit in a securities fraud case is not calculated with reference to the market value at a reasonable time after the information enters the market. *Nelson v. Serwold*, 576 F.2d 1332 (9th Cir. 1978); *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). In *Nelson*, defendants secretly purchased a controlling interest in a telephone company's stock and subsequently (about six years later) re-sold their collective interests for a profit when the company was acquired. 576 F.2d at 1334-35. Plaintiff, who had sold his shares to defendants, brought suit pursuant to Rule 10b-5 for fraudulent omissions regarding defendants' plans and the market value of the stock. *Id.* at 1335. The Ninth Circuit calculated the defendants' profit as: the price defendants received in their eventual sale of the securities less the price they paid for those securities six years prior. *Id.* The Court explicitly acknowledged that these profits far exceeded the plaintiff's loss, calculated as the value of the securities a reasonable time after the plaintiff sold to the defendant. *Id.* at 1338-39. The distinction mattered in *Nelson* because the Ninth Circuit chose to apply a rescissionary theory and ordered an award of damages based on profits. *Id* at 1339-40.

---

[6] Although it is not relevant to calculation of defendants' profits, Timber Hill agrees with common stock plaintiffs on the factual contention that the withheld information did not fully enter the market before November 17, 2014. (This fact may be relevant to calculation of class-wide damages and individual losses, but need not be decided before trial.)

Likewise, here, defendants are alleged to have violated the Exchange Act (here, Section 14) by, among other things, covertly establishing a position in a target company. Like the defendants in *Nelson*, defendants here made per-share profits in excess of plaintiffs' average per-share losses, calculated based on the market value sometime after plaintiffs' sales. (Plaintiffs' aggregate losses may exceed defendants' gain here – hence the need to consider the amount of any "caps"). The caps in the *Basile* and *Timber Hill* cases are based on defendants' profits, which, as the Ninth Circuit established in *Nelson*, are calculated based on the price at which defendants ultimately sold, not based on the value of the stock at any particular moment.[7]

### 3.  Defendants Propose An Untenable Statutory Interpretation

In their reply in support of their motion for summary judgment in *Basile*, defendants argue that *the planned tender offer* was the "subject of the violation" referred to in 20A, so damages are therefore somehow capped at profits realized by the time the tender offer became publicly known. But the violations alleged in both cases were the *tipping of material non-public information and unlawful purchases of securities* (the transactions) during the Class Period, not the tender offer itself. The phrase "subject of the violation" in Section 20A refers to the *transactions*,

---

[7] Although the Second Circuit refers to defendants' "gain" when calculating damages in *Elkind v. Liggett & Myers*, that case involved a defendant tippee who avoided losses by *selling* securities on inside information before the price *dropped*. 635 F.2d 156, 173 (2d Cir. 1980). Section 20A thereafter established the statutory right to recover as damage the "losses avoided". When calculating losses avoided, courts may look to the market price after previously withheld information in publicly disclosed to estimate those hypothetical losses. But, with profits that are both actual and readily determinable, there is no need to engage in any estimation process.

1   meaning that only profits from *unlawful transactions* (i.e. transactions that are the

2   subject of the violation) must be disgorged.[8]

3   Defendants' construction would render the phrase "the transaction or

4   transactions that are" meaningless. Such construction would therefore violate the

5   "accepted canon of statutory interpretation that we must interpret the statutory

6   phrase as a whole, giving effect to each word and not interpreting the provision so

7   as to make other provisions meaningless or superfluous."[9]

8   Further, if defendants' reading were to obtain, any defendant would be able

9   to front run on inside information (as they did here) and then subsequently disclose

10  the previously withheld information to limit their disgorgement cap under Section

11  20A, all while letting their stock continue to appreciate while the tender offer was

12  in play. Even if this was not the defendants' intent here, the absurdity of their

13  argument is manifest and wholly inconsistent with the statutory construct of Section

14  20A. To avoid this outcome, the correct interpretation of Section 20A is to decide

15  profits based on the undisputed $219 per share that defendants actually realized on

16  March 17, 2015 (plus dividends and effective rate of investment on the amounts

17  realized thereafter).

18

19  _____

20  [8] Defendants' contention that there is "only one transaction" for the purposes of
    Section 20A is not supported by law or logic. Pershing Square bought stock,

21  options and equity forwards in a series of transactions over a two-month period.
    Indeed, defendants naturally refer to these as "transactions" in their own pleadings.

22  (*See, e.g.* Answer, *Basile* Docket No. 210 at 2 ("In connection with the options and

23  forward transactions, Nomura acted for its own account as a principal and
    counterparty to PS Fund 1 -- not as a broker or agent for PS Fund 1 -- pursuant to

24  the contemporaneous written agreements."); *id.* at 34 ("Pershing Square admits that

25  it entered into the following transactions on the following dates: . . .").)

26  [9] *United States v. 144,774 pounds of Blue King Crab*, 410 F.3d 1131, 1134 (9th Cir.

27  2005) (citing *Boise Cascade Corp. v. United States EPA*, 942 F.2d 1427, 1432 (9th
    Cir. 1991)).

28

**D.**   **Timber Hill Never Agreed To Be Bound By A Finding In *Basile***

Both defendants and common stock plaintiffs appear to take the position that Timber Hill should be bound not only by a Section 20A damages cap established in *Basile*, but also by a liability verdict in *Basile*. Such a position is untenable because it would plainly violate Timber Hill's due process rights. "The fundamental requisite of due process of law is the opportunity to be heard." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (citing *Grannis v. Ordean*, 234 U.S. 385, 394 (1914)); *ASSE Int'l, Inc. v. Kerry*, 803 F.3d 1059, 1076 (9th Cir. 2015). Even *Taylor v. Sturgell*, on which defendants rely, recognizes "the deep-rooted historic tradition that everyone should have his own day in court." 553 U.S. 880, 892-93 (2008) (internal citations omitted). In *Taylor*, the Court went on to emphasize that parties cannot be bound without a "full and fair opportunity to litigate" their claims. *Id.* The derivatives plaintiffs should have a full and fair opportunity to litigate liability as it applies to their claims.

Timber Hill's counsel's statements at the July 25 hearing are consistent with its present position. (July 25, 2017 Hr'g Tr. Vol II at 13.) Timber Hill's position remains that "the issue of the cap is statutory and so there isn't really much of a question about how you calculate that as a whole." (*Id.*) Timber Hill's position remains that "under 20 cap A, it's the disgorgement or profits or the avoided losses, plus prejudgment interest in an amount that relates to what the effective return on investment would be." (*Id.*) Timber Hill's position remains that "it's actually a matter of law as a practical matter." (*Id.*) Timber Hill's position remains that the juries in each case would make a finding of the relevant class's damages, bound by the applicable cap that is set by the Court for that class, pre-trial, as a matter of law.

9

1   The contention that Timber Hill's counsel has somehow reversed course is simply

2   not supported by the record.[10]

3         Finally, even if the Court considers Timber Hill to be somehow bound by the

4   colloquy at the hearing, there remains a significant legal question as to whether a

5   stipulation can bind an uncertified class that would affect the rights of absent class

6   members. *See Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013)

7   (counsel's stipulation regarding damages cap was not binding on as-yet-uncertified

8   class). This issue is more problematic now than it appeared during the discussion at

9   the hearing, when the defendants had stated a willingness to stipulate to class

10  certification as a threshold matter.

11        **E.    The Court Never Ruled That Common Stock Plaintiffs**

12             **Are Entitled To Defendants' Profits On Derivatives Trades**

13        Common stock plaintiffs suggest that the Court has determined that they are

14  entitled to disgorgement of defendants' profits on derivatives trades. They advance

15  two arguments, both of which fail.

16        First, they argue that because the Court ruled, on a motion to dismiss, that

17  they had standing to sue, the Court has determined that they are entitled to damages

18  flowing from all of defendants' trades. Not so. That opinion, which pre-dates the

19

---

20  [10] Further, it is Timber Hill's understanding that the Court decided not to

21  consolidate the cases for trial after learning of defendants' unwillingness to

22  stipulate to class certification in the Timber Hill case. (July 25, 2017 Hr'g Tr. Vol.
    II at 41:21-24). Timber Hill still believes that the amount of the cap or caps can be

23  determined before trial; the cap is a largely statutory interpretation question for the
    Court and could be calculated on undisputed numbers: the total received by

24  defendants in the sale of corresponding shares in the merger with Actavis (not in

25  dispute); dividends received after exercise (not in dispute); and the price paid for
    the option and the exercise price paid (not in dispute). Indeed, there is no reason

26  why the applicable caps could not be determined after the trial of both actions.

27

28

filing of a separate derivatives case, (1) explicitly accepted as true the unproven allegation that Nomura acted as a broker, (2) made no determination that common stock plaintiffs had an equal claim (or any claim) to profits flowing from Pershing Square's purchases of derivatives, and (3) did not have the benefit any argument by derivatives traders. Second, the fact that defendants have not opposed common stock plaintiffs' partial motion for summary judgment on the issue of entitlement to derivatives profits does not establish anything as a matter of law. An unopposed motion for summary judgment must not be granted unless the moving party has met its burden. *Jackson v. Federal Express,* 766 F.3d 189, 194 (2d Cir. 2014) ("Rule 56 does not allow district courts to automatically grant summary judgment on a claim simply because the summary judgment motion, or relevant part, is unopposed"). The common stock plaintiffs cannot meet their burden here, where they have explicitly limited their class to sellers of common stock.

## II.   IF THE COURT ADOPTS A SINGLE-CAP APPROACH, THE AMOUNT OF THE JUDGMENTS TO BE ENTERED SHOULD NOT BE DECIDED UNTIL AFTER BOTH TRIALS CONCLUDE

Common stock plaintiffs concede that if the Court treats all of defendants' profits as being governed by a single cap, then at least some part of the jury award in their case must be preserved pending the resolution of *Timber Hill.* (*Basile* Docket No. 560 at 1.) However, common stock plaintiffs prematurely ask the Court to determine the maximum percentage of the combined profits to which the derivatives traders might be entitled.[11] The derivatives plaintiffs' losses should not be limited now based on common stock plaintiffs' purported "investigation" to

---

[11] Common stock Plaintiffs suggest an inequitable pro-rata approach that fails to consider the effect of any damages cap on each class's potential jury award in the first instance.

date.[12] Common stock plaintiffs are engaged in mere speculation on this point, the parties do not yet know what evidence regarding losses will be presented to either jury or what the juries will find on that evidence. Rather, the derivatives plaintiffs should have the opportunity to prove their losses consistent with the schedule in their case, and the Court should not enter final judgment in *Basile* until the resolution of *Timber Hill*.[13]

We offer no comment on the methodology of how the common stock plaintiffs will seek to prove their losses in their trial. That is entirely their prerogative. However, the common stock plaintiffs may properly point only to defendants' actual common stock purchases for Section 20A cap purposes. They may not back door defendants' profits on derivative investments into their common-stock-only-class claims by claiming that purchases of common stock by

---

[12] The cases cited by common stock plaintiffs all involved distributions of settlement funds when only a few eligible individual member claims remained to be processed. *See e.g.*, *In re Bank of Am. Corp. Sec., Deriv., & ERISA Litig.*, No. 09 MD 2058 (PKC), slip op. at 3 (S.D.N.Y. May 4, 2015) (ECF No. 1002); *In re In re Citigroup Inc. Bond Litig.*, No. 08 Civ. 9522 (SHS), slip op. at 3 (S.D.N.Y. Aug. 1, 2014) (ECF No. 191); *In re Wachovia Preferred Sec. & Bond/Notes Litig.*, No. 09 Civ. 6351 (RJS), slip op. at 2-3 (S.D.N.Y. Jan. 2, 2014) (ECF No. 175). These cases never involved issues of claims that were subject to scheduled jury trials, as is the situation here.

[13] Common stock plaintiffs suggest in their submission that the *Elkind* model is an appropriate means of calculating damages, suggesting that Timber Hill's gains must be offset against its losses. (*Basile* Docket No. 560 at 6, 7.) But *Elkind* is distinguishable and not binding. Not only is *Elkind* a § 10(b) case, but other courts have acknowledged that *Elkind*'s model has limited applicability. *See, e.g.*, *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) ("But it is improper to offset gains that the plaintiff recovers after the fraud becomes known against losses caused by the revelation of the fraud if the stock recovers value for completely unrelated reasons. Such a holding would place the plaintiff in a worse position than he would have been absent the fraud.") This is especially true where, as here, on the sales of calls and equity forwards and purchases of puts, Timber Hill only has losses.

Nomura to cover Nomura's independent contractual obligations to Pershing Square arising from the calls issued by Nomura and purchased by Pershing Square are common stock purchases by defendants. Nomura may well be a co-conspirator that was coached by defendants and profited from the issuance of calls and the sale of those calls to Pershing Square, but the common stock plaintiffs have chosen not to pursue claims against Nomura and nothing Nomura did in furtherance of the contractual obligations arising from the derivatives it issued and sold to defendants is properly characterized as the purchase of common stock by defendants.

Equally misplaced is the common stock plaintiffs' effort to prejudge the damages the derivatives class will prove at trial in its case. (*Basile* Docket 560 at 1, 7 (stating that the putative derivatives class can prove no more damages than would equal as much as 6% of the overall damages sustained by both groups of plaintiffs). Timber Hill disagrees with this contention. Timber Hill offers no view here on the amount of damages the *Basile* jury may award because the amount of losses that may be proven in either trial is irrelevant to the present inquiry. All that is relevant here is that for Section 20A purposes the common stock class is entitled only to disgorgement of profits on defendants' actual common stock purchases and the derivatives class is only entitled to disgorgement of profits from defendants' actual derivatives transactions.

## III.  CONSOLIDATION IS ONLY APPROPRIATE IF THE COURT SETS A SEPARATE CAP FOR EACH CASE BEFORE THE FIRST TRIAL

Timber Hill does not oppose defendants' renewed motion for consolidation – assuming: (1) that trial of the consolidated cases occurs when the Timber Hill trial is currently scheduled because the original proposed accelerated schedule has long since been abandoned, and there is no equitable or practical way to resurrect it at the present time; and (2) that the two-cap approach is used with both caps and related legal issues determined pretrial. Any other approach would necessarily create unmanageable conflicts. It is generally accepted that "align[ing] a party in a

portion of the litigation with other parties with whom he or she has a conflicting interest with regard to the other portions of the consolidated litigation." 9A Wright & Miller, Federal Practice and Procedure 2383 (3d ed.). So it would be here; consolidation under a single damages cap would align derivatives and stock plaintiffs on the portions involving liability and profits gained, while putting them in conflict on the portions involving losses.

## CONCLUSION

For the reasons stated herein, Timber Hill respectfully submits that the Court should: (1) determine that defendants' liability to the common stock plaintiffs under Section 20A is limited to their profits realized on their common stock purchases during the Class Period; (2) order that defendants' liability to the derivatives plaintiffs under Section 20A is limited to their profits on derivatives transactions entered into during the Class Period; (3) order the parties to submit their proposed calculation of defendants' profits from their common stock and derivatives transactions as a matter of law, before the trial in *Basile*; and (4) apply the amount of each type of profit (stock and derivatives) as a limit on defendants' liability in the respective class actions.

Dated:   November 6, 2017

MARC M. SELTZER
STEVEN G. SKLAVER
KRYSTA K. PACHMAN
SUSMAN GODFREY L.L.P.

EDGAR G. SARGENT (*Pro Hac Vice*)
esargent@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone (206) 516-3880
Facsimile (206) 516-3883

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ROBERT N. CAPPUCCI
ARTHUR V. NEALON
ENTWISTLE & CAPPUCCI LLP

By */s/ Marc M. Seltzer*
     Marc M. Seltzer

*Attorneys for Plaintiff Timber Hill LLC*