1   Mark Holscher (SBN 139582)
2   mark.holscher@kirkland.com
    KIRKLAND & ELLIS LLP
3   333 South Hope Street
    Los Angeles, California 90071
4   Telephone:   (213) 680-8400
5   Facsimile:    (213) 680-8500
    *Attorneys for Pershing Square Defendants*
6

7   John C. Hueston (SBN 164921)
8   jhueston@hueston.com
    HUESTON HENNIGAN LLP
9   523 West 6th Street, Ste. 400
    Los Angeles, California 90014
10  Telephone: (213) 788-4340
11  Facsimile:  (888) 775-0898
    *Attorneys for Valeant Defendants*
12

13                  **UNITED STATES DISTRICT COURT**
14                  **CENTRAL DISTRICT OF CALIFORNIA**
                    **SOUTHERN DIVISION—SANTA ANA**
15

16  IN RE ALLERGAN, INC. PROXY          )   Case Nos. 14-cv-2004-DOC (*Basile*) and
17  VIOLATION SECURITIES                )   17-cv-04776-DOC (*Timber Hill*)
    LITIGATION                          )
18  _____    )   Honorable David O. Carter
                                        )
19                                      )   CLASS ACTION
    TIMBER HILL LLC, individually and   )
20  on behalf of all others similarly situated )   **DEFENDANTS' OMNIBUS**
                                        )   **OPPOSITION TO PLAINTIFFS'**
21              Plaintiff,              )   **MOTIONS REGARDING**
                                        )   **DAMAGES ALLOCATION**
22        v.                            )
                                        )   Date and Time: 11/27/2017, 8:30 a.m.
23  PERSHING SQUARE CAPITAL             )   Courtroom 9D
24  MANAGEMENT, L.P., *et al.*          )
                                        )
25              Defendants              )
                                        )
26  _____    )
27

28

# I.    INTRODUCTION[1]

If the Court denies Defendants' summary judgment motions, and a jury ultimately finds liability, Defendants' liability across both the *Timber Hill* and *Basile* actions will be capped at Defendants' "profits gained" in the sole transaction at issue in both cases. The cap is computed with reference to (a) Defendants' purchase cost (a fixed and undisputed amount); and (b) the date by which any alleged material nonpublic information related to a tender offer at issue was disclosed to the public. As Defendants explained in their summary judgment motion, the Court should rule that the last possible date on which the information at issue remained undisclosed was June 18, 2014 (when Defendants filed formal SEC documents fully disclosing the terms of their exchange offer). But no party has moved for summary judgment as to when the appropriate date for purposes of computing the cap falls as between the start of the Class Period and June 18, 2014. Thus, that issue will be a disputed issue in the *Basile* trial, to be decided by the *Basile* jury (assuming, for the sake of argument, that there is a finding of liability).

On July 27, 2017, the Court asked each of the parties in *Timber Hill* and *Basile* to submit their "proposals for how to structure the allocation of potential damages [across both actions] in light of the applicable damages cap." Defendants' proposal, described in greater detail in Defendants' motion, is that the first jury to find liability must determine the cap amount, with that amount binding both classes across both actions. This straightforward proposal is the one that *all* of the parties *agreed to* during the July 25 hearing about whether to consolidate the cases. In fact, during that hearing, Timber Hill's counsel stated on the record that the cap "can easily be determined by whichever jury hears the case first." Were it otherwise, it would have

---

[1]    References to "Opening Br." are to Defendants' Motion, *Basile* ECF No. 558. References to "Timber Hill Mot." are to *Timber Hill* ECF No. 67. References to "*Basile* Plfs. Mot." are to *Basile* ECF No. 560. This opposition relates to both the Timber Hill Motion and the *Basile* Plaintiffs' Motion.

been apparent to the Court that separate trials risked inconsistent verdicts as to the cap amount, with two juries being asked a factual question that can have only one answer: What were Defendants' "profits gained" in the sole transaction at issue across both cases?

Timber Hill now refuses to abide by its prior agreement that the cap "can easily be determined by whichever jury hears the case first." Instead, Timber Hill now suggests that the Court—not a jury—should determine the cap. That is no solution. The cap turns on factual issues that, if there is a trial, will be hotly disputed, including (a) whether each piece of alleged information at issue was material and related to a tender offer, (b) when and whether that information was disclosed by Valeant to Pershing Square, and (c) when the information was disclosed to the market. Defendants have the right to a jury determination on these issues under settled law.

Thus, if the Court is disinclined to hold Timber Hill to its prior agreement, it is left with the two alternatives described Defendants' opening brief. First, if the Court does not mandate the use of a single cap, the Court should revisit consolidation. After all, the very premise of the Court's consolidation ruling is no longer true given that Timber Hill has reversed its position, and the risk of inconsistent verdicts, as well as practical unmanageability, strongly supports consolidation. Alternatively, if the Court does not order consolidation, it should use security-specific sub-caps, which both Timber Hill and Defendants have proposed in their submissions. This would protect against the risk of inconsistent rulings by capping Defendants' liability to the *Basile* stock class at Defendants' gains based on PS Fund 1's stock purchases (which occurred on February 25 and 26, 2014), and to the *Timber Hill* derivatives class (if a class is certified) at the gains based on PS Fund 1's derivatives purchases (which occurred after February 26, 2014).

## II.   ARGUMENT

### A.   The Court Should Not Wait Until After Jury Verdicts In Both Cases To Resolve The Allocation Process Issues Raised In These Motions.

The *Basile* plaintiffs propose that the Court wait to decide "allocation issues" until after juries in both cases have returned verdicts.[2] As a threshold matter, determining the precise split between the classes has nothing to do with the issues raised in Defendants' motion, which concern the *damages cap* that will apply across the actions, and the *process* to be utilized to determine allocation. Defendants have proposed that the *Basile* jury, to the extent it finds liability, determine the cap amount that applies to both actions.[3] The *Basile* plaintiffs are in apparent agreement with Defendants' proposal, with Timber Hill left as the only party with an apparent objection, despite its counsel's statements to the Court during the July 25 status conference. Defendants also proposed two alternatives (consolidation, or the use of security-specific sub-caps).[4] Whichever proposal the Court adopts, one or both juries will need to consider issues relating to the damages cap. Trial in the *Basile* action is scheduled to begin on January 30, 2018.[5] As a result, the Court does not have the option of waiting until *after* jury verdicts in both cases to address these issues. Indeed, having clarity on these issues was the reason the Court set a deadline to "hear the parties' proposals for how to structure the allocation of potential damages in light of the applicable damages cap."[6] Absent a ruling as to how the cap will be determined, there will be no clarity as to which jury will decide the cap.

Beyond that, to the extent liability is found, Defendants have no objection to the allocation of a damages award actually occurring after trials in both actions and claims administration. In fact, any actual allocation likely *cannot* occur until after the claims

---

[2]   *Basile* Plfs. Mot. at 2, 6-8.
[3]   Opening Br. at 6-7.
[4]   *Id*. at 8-9.
[5]   *Basile* ECF No. 225 at 2.
[6]   *Basile* ECF No. 441 at 2.

administration process is complete, following trials in both actions or a consolidated trial. Even after the jury in each trial (or in a consolidated trial) determines liability and the damages *cap*—the total amount of *actual* damages in each class must still be determined through the claims process. During that process, (a) class members would submit claim forms and, then, (b) Defendants would have the opportunity required under the securities laws to, among other things, litigate individual issues, such as rebutting the fraud on the market presumption (e.g., where the claimants are sophisticated investors that relied on unrelated information when selling) and determining whether class members had countervailing gains to be offset against alleged damages.[7] Consequently, only after that process is complete will the Court and the parties know the aggregate damages across each class, from which an allocation determination can be made.

The decision in *Vivendi Universal* is instructive. *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 587 (S.D.N.Y. 2011), *aff'd sub nom. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223 (2d Cir. 2016). In that case, a jury returned a verdict finding that Vivendi had violated § 10(b) of the Exchange Act and Rule 10b-5 thereunder. *Id.* at 521. The court, however, ruled that "entry of final judgment at this juncture would be premature," as Vivendi was "entitled to rebut the presumption of reliance on an individual basis" and that, "[i]n addition, it may be that the methods for calculating an individual claimant's damages will be hotly contested and may trigger additional appeals." *Id.* at 587. Thus, instead of entering judgment, the Court began a claims administration process, in which Vivendi was entitled to contest individualized issues of, among other things, each claimant's damages and reliance. *Id.*

The result here should be no different. Indeed, to ask a jury to ascertain "aggregate" damages, as both sets of plaintiffs seek, and then allocate such award

---

[7] Issues relating to Lead Plaintiffs' own witnesses should, of course, be heard during the initial trial(s). Given the *Basile* plaintiffs' stated intention to move to exclude all such evidence and for bifurcation, Defendants anticipate that such issues will be presented to the Court and resolved prior to the *Basile* trial.

prior to any claims administration would yield patently erroneous numbers (since it would assume that *all* claims would be found to be valid after the claims administration and challenge process and no offsets for potential gains). In *Vivendi*, for example, many of the individual claims submitted after the initial jury verdict were denied, including instances in which the defendant was able to rebut the presumption of reliance. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 183 F. Supp. 3d 458, 467 (S.D.N.Y. 2016). Indeed, awarding damages before claims administration is complete would be particularly unfair, as the *Basile* plaintiffs have informed Defendants that they intend to ask the Court to bar scrutiny even as to Lead Plaintiffs' own purchases at trial.

### B. Defendants' Proposal For Allocating Damages In Light Of The Applicable Damages Cap Is The Only Proposal That Is Workable.

Defendants' proposal for allocating potential damages in light of the applicable damages cap is described more fully in the opening brief.[8] In summary, Defendants propose that (a) the Court grant summary judgment, as Defendants have requested, that the cap be computed with reference to a date no later than June 18, 2014, when Defendants filed formal exchange offer documents with the SEC and undisputedly made full disclosures concerning such offer; and then (b) whichever jury hears the case first and (for the sake of argument) finds liability determines the total cap amount applicable in both cases, with reference to a date between the start of the Class Period and June 18, 2014.[9]

Both sets of plaintiffs *agreed* during the July 25, 2017 status conference that the first jury to hear the case and find liability would determine a single, binding cap.[10] While it appears from their brief that the *Basile* plaintiffs may still be agreeable to that, Timber Hill has reversed course completely, now arguing that the Court—not

---

[8]   Opening Br. at 6-7.

[9]   *Id*. If the *Basile* jury does not find liability, the single damages cap will of course be decided in *Timber Hill*.

[10]   *See id*. at 5.

1    "whichever jury hears the case first"—should determine the cap amount.[11] The Court

2    should reject any proposal that would take the cap issue away from the jury.

3            To determine the applicable cap amount, the factfinder will need to determine,

4    at the very least, (a) whether information was "material," "nonpublic," and "related to

5    [a] tender offer," (b) whether and when that information was disclosed by Valeant to

6    Pershing Square, and (c) the date before June 18, 2014 on which the information was

7    disclosed publicly.[12] These questions overlap with core questions on Defendants'

8    liability, which are subject to the right to trial by jury. *Aid Auto Stores, Inc. v. Cannon*,

9    525 F.2d 468, 469 n.1 (2d Cir. 1975) ("frivolous" to argue that there was no jury trial

10   right for a claim under § 10(b) of the Exchange Act); *Dasho v. Susquehanna Corp.*,

11   461 F.2d 11, 14 (7th Cir. 1972) (there is a jury trial right for § 10(b) claims). Thus, to

12   the extent they are not resolved in Defendants' favor on summary judgment, they are

13   for a jury to determine because they turn on issues of fact common to plaintiffs' legal

14   claims. *See Owens-Illinois, Inc. v. U.S. Dist. Court for W. Dist. of Wa.*, 698 F.2d 967,

15   971 (9th Cir. 1983) ("The right to a jury trial in these circumstances is constitutional

16   in origin and, where common issues of fact are involved, may not be denied by trying

17   the [equitable] claims first to the court."); *cf. Granfinanciera, S.A. v. Nordberg*, 492

18   U.S. 33, 41 (1989) (right to jury trial applies to suits in which "legal rights were to be

19   ascertained and determined, in contradistinction to those where equitable rights alone

20   were recognized, and equitable remedies were administered") (internal quotation

21   omitted).

22           By way of example, the *Basile* plaintiffs' damages expert asserts that Valeant

23   disclosed five categories of material non-public information to Pershing Square: (a)

24   "Valeant's disclosure to Pershing of non-public information relating to Allergan as a

25   takeover target"; (b) "financial modeling"; (c) "nonpublic deal model inputs"; (d)

26   "nonpublic IRR targets"; and (e) "shared" modeling inputs that "show[ed] that

27   ───────────────
     [11]  Timber Hill Mot. at 3-5.

28   [12]  17 C.F.R. § 240.14e-3(a); 15 U.S.C. § 78t-1(b)(1).

Valeant could rationally bid more than $200 per share for Allergan."[13] To determine the cap amount, a factfinder must determine (a) whether each piece of information was actually disclosed by Valeant to Pershing Square, (b) whether it was nonpublic, material, and related to a tender offer, and (if so) (c) when such information was ultimately disclosed to the public. Defendants have a right for these issues to be tried to a jury. Indeed, if the alleged information was never disclosed to Pershing Square, or was public, immaterial, or unrelated to a tender offer, then it cannot be actionable under Rule 14e-3 in the first place. Accordingly, for the information to even have any relevance to the cap, a jury—not the Court—must find that such information is properly within the scope of Rule 14e-3 to begin with.

**C.    Plaintiffs Agree With Defendants' Proposal In Several Respects.**

In several important respects, the proposals advanced by both sets of plaintiffs are consistent with the proposals described in Defendants' opening brief.

<u>First</u>, as an alternative proposal, the *Basile* plaintiffs suggest that "the *Basile* action should proceed to trial and have a jury verdict on damages, and an amount accounting for Timber Hill's 6% allocation can be held back in escrow pending determination of the *Timber Hill* trial."[14] Implicit within this proposal is that the *Basile* jury would also determine a cap amount (assuming it found liability), with that amount binding the *Timber Hill* class as well. In that event, this proposal is consistent with Defendants' own proposal, described above and in Defendants' opening brief.[15]

---

[13]    *Basile* ECF No. 404-32 (Bajaj Report) at 20-32.

[14]    *Basile* Plfs. Mot. at 3. Defendants express no view as to the 6 percent figure. Nor do Defendants express any view as to the procedure advocated to impose such figure. Moreover, as described above, Defendants do not agree that class-wide damages can be fixed until after the claims administration process is complete. To the extent the *Basile* plaintiffs use the term "damages" to mean that the *Basile* jury will decide the "true value" of each allegedly damaged share on each day of the Class Period, that is consistent with the proposal described in Defendants' opening brief.

[15]    *See* Opening Br. at 6-7.

1    Second, Timber Hill, on the other hand, argues that there should be a separate

2    damages cap applicable in each case based on "each category of transactions."[16] If the

3    Court is disinclined to adopt Defendants' primary proposal (or to order consolidation),

4    Defendants have no objection to the use of such sub-caps. As Defendants understand

5    the proposal, the *Basile* jury would decide the "profits" that Defendants gained on

6    account of PS Fund 1's purchases of Allergan common stock, which occurred on

7    February 25 and 26, 2014, and Defendants' liability to the *Basile* class would be

8    limited to such amount. Next, the *Timber Hill* jury would decide the "profits" that

9    Defendants gained on account of PS Fund 1's purchases of Allergan derivatives,

10   which occurred during the remainder of the Class Period, and Defendants' liability to

11   the *Timber Hill* class would be limited to that amount.[17] Taken together, the caps in

12   each case would equal the full amount of the "profits" that Defendants gained in the

13   transaction overall. This proposal is thus consistent with the third alternative in

14   Defendants' own motion.[18]

15       **D.    Consolidation Of The Actions Would Easily Resolve These Issues.**

16       As Defendants described in their opening brief, when the Court declined to

17   consolidate the two actions, it was with the understanding—based on Timber Hill's

18   counsel's statements to the Court—that the cap "can easily be determined by

19   whichever jury hears the case first."[19] Because that premise is no longer true, as

20   Timber Hill's counsel has reversed his position, the Court should revisit its

21   consolidation order for the reasons described in Defendants' opening brief (primarily,

22   to protect against the risk of inconsistent verdicts as to the cap amount—a textbook

23   reason that courts order consolidation).[20] If the Court did so, it would obviate any need

24   to address further the issues raised in the parties' allocation briefing. The jury in the

25   _____

     [16]  Timber Hill Mot. at 4.

26   [17]  As described above, a jury must determine such caps, not the Court.

     [18]  Opening Br. at 9.

27   [19]  *Id*. at 5.

28   [20]  *See id*. at 8-9.

consolidated trial would simply render a verdict as to both liability and the cap amount, which would bind both classes.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny the motions of both sets of plaintiffs, and adopt the proposal described in Defendants' opening brief.

Dated: November 6, 2017                    Respectfully submitted,

                                           KIRKLAND & ELLIS LLP

                                           By: */s/ Mark Holscher*

                                           Mark Holscher (SBN 139582)
                                           mark.holscher@kirkland.com
                                           333 South Hope Street
                                           Los Angeles, CA 90071
                                           Telephone: (213) 680-8400
                                           Facsimile: (213) 680-8500

                                           -and-

                                           KRAMER LEVIN NAFTALIS &
                                           FRANKEL LLP
                                           John P. Coffey (*admitted pro hac vice*)
                                           scoffey@kramerlevin.com
                                           Eileen M. Patt (*admitted pro hac vice*)
                                           epatt@kramerlevin.com
                                           Seth F. Schinfeld (*admitted pro hac vice*)
                                           sschinfeld@kramerlevin.com
                                           1177 Avenue of the Americas
                                           New York, NY 10036
                                           Telephone: (212) 715-9100
                                           Facsimile: (213) 715-8000

                                           *Attorneys for Pershing Square Defendants*

1    Dated: November 6, 2017              Respectfully Submitted,

2                                        HUESTON HENNIGAN LLP

3
                                         By: */s/ John C. Hueston*
4

5                                        John C. Hueston (SBN 164921)
                                         jhueston@hueston.com
6                                        Moez M. Kaba (SBN 257456)
                                         mkaba@hueston.com
7                                        Steven N. Feldman (SBN 281405)
                                         sfeldman@hueston.com
8
                                         620 Newport Center Drive, Suite 1300
9                                        Newport Beach, CA 92660
                                         Telephone: (949) 229-8640
10                                       Facsimile:  (888) 775-0898
11

12                                       *Attorneys for Valeant Defendants*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SIGNATURE CERTIFICATION

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I hereby attest that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized this filing.

Dated: November 6, 2017

Respectfully submitted,
KIRKLAND & ELLIS LLP

By: /s/ Mark Holscher

Mark Holscher (SBN 139582)
mark.holscher@kirkland.com
333 South Hope Street
Los Angeles, California 90071

*Attorneys for Pershing Square Defendants*

**SIGNATURE CERTIFICATION**