MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA K. PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150

ANDREW J. ENTWISTLE *(Pro Hac Vice)*
aentwistle@entwistle-law.com
VINCENT R. CAPPUCCI *(Pro Hac Vice)*
vcappucci@entwistle-law.com
ARTHUR V. NEALON *(Pro Hac Vice)*
anealon@entwistle-law.com
ROBERT N. CAPPUCCI *(Pro Hac Vice)*
rcappucci@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200
Facsimile: (212) 894-7272

[Additional Counsel for Plaintiff on Signature Page]

*Attorneys for Plaintiff Timber Hill LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION DERIVATIVES LITIGATION | Case No. 2:17-cv-04776 DOC (KESx) <br><br> The Hon. David O. Carter <br><br> CLASS ACTION <br><br> **PLAINTIFF TIMBER HILL LLC'S ADDITIONAL BRIEFING ON § 20A DAMAGES CAP** |

5500016v1/015666

# I. INTRODUCTION

The plain language of § 20A caps plaintiffs' damages at the profits gained or loss avoided in the securities transactions at issue. The calculation of the amount of the statutory damages cap is an issue for the Court, as the calculation of profits to be disgorged is in the traditional province of the Court.

Defendants attempt to read a limitation into § 20A that does not exist; namely, they argue that calculating the damages cap under § 20A requires a jury determination as to when defendants publicly disclosed material non-public information. But defendants are conflating the calculation of damages, which could potentially have a temporal limitation under a "but for" approach to measuring out-of-pocket losses, and the calculation of the damages cap, which has no such limitation. Defendants' position is contrary to law and is unsupported by the plain language of the statute, the legislative history, and the case law. The plain meaning of the statute contains no temporal requirements applicable to the period during which defendants earned profits as a result of transactions entered into during the period of nondisclosure. Moreover, the legislative history and case law support the conclusion that Congress intended the calculation of plaintiffs' damages to be a separate determination from the calculation of the § 20A damages cap.

Furthermore, defendants' argument that there is a Seventh Amendment right to have a jury calculate the damages cap is unsupported. Disgorgement of profits, in general, is an equitable remedy and there is no Seventh Amendment jury trial right to determine disputed questions of fact regarding the amount of profits to be disgorged.

The damages cap is determinable by a straightforward calculation. There are no disputed factual issues that need to be considered in order to measure "the profit gained or loss avoided in the transaction or transactions that are the subject of the violation." 15 U.S.C. § 78t-1(b)(1). That amount can be calculated to the penny. Here, defendants have unlawfully gained $3,574,813,863.60 in profits. That

amount is calculated by taking defendants' total sale price received (including dividends and the cost of capital), of $7,274,795,754.33, and subtracting the total price paid by defendants, $3,699,981,890.73. This damages cap calculation is not the same as the actual damages that will be sought by Timber Hill at trial. At trial, Timber Hill will present two alternative theories of damages, disgorgement and out-of-pocket losses, and the statutorily determined cap of $3.6 billion is the maximum amount of damages that Timber Hill could obtain.

## II.   ARGUMENT

### A.   Defendants Conflate The Calculation Of Disgorgement With The Calculation Of The Damages Cap Under § 20A

Defendants conflate the calculation of the damages cap under § 20A with plaintiffs' losses. Section 20A states, in relevant part, that "[t]he total amount of damages . . . shall not exceed ***the profit gained or loss avoided*** in the transaction or transactions that are the subject of the violation." 15 U.S.C. § 78t-1(b)(1) (emphasis added). By its plain terms, the total cap on damages imposed by § 20A cannot exceed the profit gained or loss avoided in the transaction or transactions that are the subject of the violation. It imposes no temporal limitation on those profits.

The statute does not, as defendants contend, limit the damages cap based on any particular timeframe of disclosure of material non-public information. While plaintiffs can only recover damages that were proximately caused by defendants' violation of the law, that limitation is not the same as the statutory cap. Indeed, if the statutory cap were identical to recoverable damages, §78t-1(b)(1) would be superfluous. As the Court properly observed in its tentative order denying defendants' motions for summary judgment and granting-in-part *Basile* plaintiffs' motion for summary judgment, "The statute limits damages to profits gained in the subject *transaction(s)* – not profits gained as a result of the material nonpublic information defendants possessed or profits gained as a result of the violation." Tentative Order at 48:17-19.

The § 20A damages cap is not set by reference to the market price following disclosure of material non-public information, and the cases cited by defendants on this point do nothing to cast doubt on this conclusion. *Short v. Belleville Shoe Mfg. Co.*, 908 F.2d 1385 (7th Cir. 1990) examined the statute of limitations and tolling principles in a 10b-5 case. That opinion mentions § 20A only in dicta (and for a proposition that does not depend on whether profits are calculated with reference to actual proceeds from defendant's sales). *In re MicroStrategy, Inc. Sec. Litig.*, 115 F. Supp. 2d 620 (E.D. Va. 2000) and *Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332 (S.D.N.Y. 2014) both addressed the calculation of **losses avoided** when defendants **sold securities while possessing material non-public information** which are hypothetical and necessarily set with reference to the market price after disclosure (in contrast to profits which were actually gained). *SEC v. MacDonald*, 699 F.2d 47 (1st Cir. 1983) (en banc) addresses the standard applicable to an SEC disgorgement action — a different standard than a § 20A private action).[1] We note that defendants failed to cite *SEC v First City Financial Corp Ltd.*, 890 F.2d 1215 (D.C. Cir. 1989), which declined to follow *MacDonald*, holding instead that the amount of profits to be disgorged was the amount of net proceeds defendants realized after sale. *Id*. at 1232. More to the point, the Ninth Circuit in *Nelson v Serwold*, 576 F.2d 1332 (9th Cir. 1978), a pre-§ 20A case, held that when calculating the amount of profits to be disgorged (albeit in the damages context), the court uses the proceeds that defendants actually realized when defendants sold their secretly accumulated stock six years later. *Id*. at 1338-40.

---

[1] As indicated in Part I.B, below, defendants may seek to rely on the reference to *MacDonald* in the House Committee's Report pertaining to § 78t-1(b)(1); however, the House Committee's reference to *MacDonald* and the language cited by defendants at the hearing relates to § 21, not § 20.

### B. The Legislative History of § 78t-1(b)(1) Supports Timber Hill's Interpretation

As detailed above, the plain meaning of § 78t-1(b)(1) is unambiguous. There is no reference to a limitation on the cap based on the date of disclosure of material non-public information. Defendants have failed to cite any case or secondary materials that would warrant such an interpretation. Basic rules of statutory construction followed in this Circuit require that the Court look no further than the plain language itself when the language is unambiguous, as it is here. *United States v. Leyva*, 282 F.3d 623, 625 (9th Cir. 2002) (quoting *United States v. Daas,* 198 F.3d 1167, 1174 (9th Cir. 1999)) ("Under the rules of statutory construction, '[t]he plain meaning of the statute controls, and courts will look no further, unless its application leads to unreasonable or impracticable results.'"); *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1976 (2016). As Congress explained at the time of its enactment, the purpose of § 20A is simply to codify the existence of a private right of action for insider trading violations. *See* H.R. Rep. No. 100–910, at 12–14, 26 (1988), *reprinted in* 1988 U.S.C.C.A.N. 6043, 1988 WL 169923 ("Although the courts have recognized an implied private right of action in insider trading cases, this section would codify an express right of action against insider traders and tippers for those who traded the same class of securities 'contemporaneously' with and on the opposite side of the market from the insider trader.").

In the House Committee Report regarding § 78t-1(b)(1), the Committee noted a distinction between actual damages suffered by plaintiffs in securities cases and the damages cap applicable for actions by opposite-side traders, acknowledging that the damages cap and damages calculations are two separate inquiries:

> [I]n situations such as the *Anheuser-Busch* case and others, the potential harm to the plaintiff from the defendant's insider trading or tipping may be far greater than the profit gained or loss avoided by that defendant. The Committee recognizes that where the plaintiff

> demonstrates that he was defrauded by the defendant's insider trading and suffered actual damages proximately caused by the defendant's behavior, a cap of profit gained or loss avoided by the defendant, whi[c]h is applicable for actions by contemporaneous traders, is not appropriate. Rather, in such an implied private cause of action, the plaintiff should be able to recover the full extent of those actual damages.

H.R. REP. 100-910, 28, 1988 U.S.C.C.A.N. 6043, 6065.

The purpose for enacting § 20A was to confirm that contemporaneous traders have a private right of action, while ensuring that "the communicator would not be subject to potential liability for the profits gained or losses avoided by all persons who may have ultimately learned of the information." *Id.* In order to expand the universe of potential victims, § 20A permits contemporaneous traders to bring an action against a defendant even if they cannot prove they actually bought shares from a defendant or sold shares to a defendant. *See Fujisawa Pharm. Co. v. Kapoor,* 115 F.3d 1332, 1337 (7th Cir. 1997) ("[T]he purpose of section 20A was to extend the protections of the existing insider-trading prohibition to persons not in privity with the insider. . ."). However, permitting additional plaintiffs to bring claims potentially exposes defendants to liability going far beyond the amounts involved in the defendant's own transactions. Congress included the cap in § 20A to protect defendants from liability disproportionate to their wrongdoing. Further reducing the cap by introducing a "loss causation" limitation would be without any justification based on the purpose of the statutory cap.

Defendants propose an interpretation that would undermine Congress' intent by allowing a defendant to retain much of his gains from front-running an acquisition by cutting off his exposure under § 20A while the price of the securities he purchased continued to rise. This would frustrate the statutory purpose: to put the wrongdoer back in the position he would be in had he observed the "abstain or disclose" rule.

In reviewing the legislative history, defendants may cite the House Committee's effort to adopt the standard applied in *SEC v. MacDonald*, 699 F.2d 47 (1st Cir. 1983). But, as noted, at page 6057, the Committee made it clear that it was referring to § 21, and not the damages cap in § 20A. H.R. REP. 100-910, 20, 1988 U.S.C.C.A.N. 6043, 6057.

### C. Calculation Of The Damages Cap Is A Question For The Court

The calculation of the damages cap is an issue for the Court, not the jury. Defendants contend there are underlying questions of fact that require a jury determination, for example, whether the non-disclosed information at issue qualifies as material non-public information and when and whether such information was publicly disclosed. *Basile*, Dkt. 563 at 7.

First, these supposed questions of fact are not relevant to the determination of the damages cap. As detailed above, the date of disclosure of material non-public information is not a component on the profits that are the subject of the damages cap.

Second, even if defendants were able to demonstrate that the date of disclosure of material non-public information is relevant to the determination of the damages cap, these factual issues are for the Court to decide. In *Newby v. Enron Corp.*, 188 F. Supp. 2d 684, 700 (S.D. Tex. 2002), the court recognized that the damages cap under § 20A is equitable in nature:

> Defendants argue that because section 20A specifically provides for disgorgement of insider trading proceeds, it is a statutory measure of damages, rather than an equitable remedy . . . However, the statutory authorization for equitable remedies, even when those remedies are in the form of a monetary award, does not strip them of their equitable character."

(citations omitted). Disgorgement of profits is generally an equitable remedy and there is no Seventh Amendment right to a jury trial on disputed questions of fact in determining the amount to be disgorged. *See, e.g., Fifty-Six Hope Road Music, Ltd.*

*v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1074-75 (9th Cir. 2015) (calculation of profits to be disgorged for Lanham Act violations was for the court and not the jury).

In the hearing on the motions for summary judgment and allocation of damages, counsel for defendants cited *Beacon Theaters v. Westover*, 359 U.S. 500 (1959), in support of the argument that it would violate the Seventh Amendment for the Court to decide the issue of when material non-public information was disclosed to the market, assuming such determination is relevant to calculating the cap. But even if the Court needed to determine the date such information was disclosed to the market in order to calculate the damages cap – which it does not – *Beacon Theatres* is inapposite because it only stands for the proposition that the Seventh Amendment is violated when a court decides a question of fact in an equitable proceeding, in that case, a declaratory relief action, which is binding in a subsequent jury trial. If the Court needed to determine the date such information was disclosed in order to calculate the cap, such a determination would not be binding on the jury. The jury would make its own independent decision regarding the amount of damages, which is a separate issue from the damages cap. The Court, and not the jury, would reduce any verdict that exceeded the cap. Thus, no determination made by the Court as to the amount of profits that are subject to the cap will be binding on the jury. In fact, the jury would not even need to be made aware of the existence or amount of the cap.

### D. Under § 20A, The Calculation Of The Damages Cap Is Straightforward

Under § 20A, the calculation of the damages cap is a straightforward calculation. The total profits obtained by defendants are calculated by measuring the profits realized by defendants for entering into the transactions based on the trades at issue. Here, for example, the calculation is total sale price received (which includes sale price received, dividends, and cost of capital), less total price paid:

|   |   |
|---|---|
| 1 | $7,274,795,754.33  [**Total Sale Price Received**] |
| 2 | (Sale Price Received$^2$ + Dividends$^3$ + Cost of Capital$^4$) |
| 3 | −   $3,699,981,890.73 [**Total Price Paid**$^5$] |
| 4 | $3,574,813,863.60 [**Total Profits Unlawfully Earned**]. |

While there may be some disagreement among the parties as to the appropriate inputs for the calculation which can be addressed to the Court at a later date, the calculation itself is straightforward and easily done by the Court.

### E. Timber Hill Plans To Pursue Two Alternative Damages Theories: Disgorgement And Out-Of-Pocket Damages, Which Are Separate From The Calculation Of The Damages Cap

While the Court has discretion to award damages under either theory, Timber Hill believes disgorgement of profits is the most appropriate remedy under § 20A. *See In re Petco Animal Supplies Inc. Sec. Litig.*, No. 05-CV-0823-H RBB, 2006 WL 6829623, at *10 (S.D. Cal. Aug. 1, 2006) (granting in part and denying in part

---

[2] Sale Price Received for Derivatives is $6,396,391,612.74. *See* Defendants Pershing Square Capital Management, L.P., PS Management GP, LLC, PS Fund 1, LLC and William Ackman's Amended Supplemental Responses to Plaintiffs' Third Set of Interrogatories, dated July 31, 2017; ECF 74: Pershing Square's Answer and Affirmative Defenses. Sale Price Received for Common Stock is $135,122,102.46. *See id.*

[3] Dividends Received on Derivative Transactions and Common Stock is $5,527,041.40. *See* The Center For Research In Security Prices, available at http://www.crsp.com/ ret'd Nov. 3, 2017.

[4] Cost of Capital on Derivative Transactions is $722,492,267.26. *See* Deposition of Steven Grenadier, PhD (defendants' expert) at 277:7-279:3; Deposition of R. Glenn Hubbard, PhD (defendants' expert) at 128:22-25. Cost of Capital on Common Stock is $15,262,460.47. *See id.*

[5] Price Paid to Acquire Derivatives is $3,141,914,028.00. *See* Pershing Defendants' Responses to Plaintiffs' First Set of Interrogatories, dated December 16, 2016. Price Paid to Exercise Derivatives is $482,161,942.73. *See* PERCAL0325041. Price Paid to Acquire Common Stock is $75,905,920.00. *See* Pershing Defendants' Responses to Plaintiffs' First Set of Interrogatories, dated December 16, 2016.

motions to dismiss); 15 U.S.C. § 78t–1 (§ 20A provides for a right of private action and limits recovery). Disgorgement is also a proper remedy for violations of § 14(e). As the Ninth Circuit explained in *Plaine v. McCabe*:

> The damages awarded a successful section 14(e) plaintiff may go beyond a determination of a "fair price." The purpose of the 1934 Act is to compensate plaintiffs injured by violations of the federal securities laws whether the measure of damages is out-of pocket loss, benefit of the bargain, or some other appropriate standard. *See Osofsky v. Zipf*, 645 F.2d 107, 111 (2d Cir. 1981). "'[A]ctual damages' may include loss of possible profit, unless wholly speculative, from securing a merger agreement more favorable to plaintiff." *Dofflemyer*, 558 F. Supp. at 380.

797 F.2d 713, 722 (9th Cir. 1986). While disgorgement of profits is a proper remedy, there can be no dispute that out-of-pocket losses are also an appropriate alternative measure of recovery for violation of federal securities laws. *See Wool v. Tandem Computers Inc.,* 818 F.2d 1433, 1437 (9th Cir. 1987), *impliedly overruled in part on other grounds by Hollinger v. Titan Capital Corp.,* 914 F.2d 1564, 1577–78 (9th Cir. 1990) (*en banc*) ("The out-of-pocket rule fixes recoverable damages as 'the difference between the purchase price and the value of the stock at the date of purchase.'").

The legislative history of the Insider Trading and Securities Enforcement Act, which enacted § 20A, likewise indicates that the disgorgement of profits may be an appropriate remedy in actions under § 20A. Congressman Lent described the impact of establishing § 20A: "Insider traders will be liable under this new provision to persons on the opposite side of trades from the insider trader, ***for the amount of the insider trader's profits gained*** or losses avoided." 134 Cong. Rec. H7465-02, 1988 WL 180346 (emphasis added).

Similarly, Senator Heinz described the need for § 20A by stating that "Congress must give honest market participants a clear right to judicial action to take back illegal profits from insider traders" and that "Congress must make it clear

that all insider trading transactions will result in a loss." If insider traders were not forced to disgorge the full amount of their profits under § 20A regardless of plaintiffs' losses, the intended purpose of the statute would not be met. 134 Cong. Rec. S17218-01, 134 Cong. Rec. S17218-01, S17218, 1988 WL 178422.

### F. Timber Hill Does Not Seek A "Two Day Limitation" On Damages Calculations

The Court's December 15, 2017 Minute Order (Dkt. 85) notes that "the 'profits' method of allocation presented at the hearing" may contradict the Court's finding that Pershing "caused" Nomura to purchase Allergan common stock during the *Basile* class period and that *Basile* plaintiffs and defendants traded securities of the "same class." While Timber Hill understands that the Court will address this issue at a later date, we note that were the Court to follow a net profits approach to allocation, it would be appropriate to give the Timber Hill class credit for all of the defendants' derivatives trades and the *Basile* plaintiffs credit for all of the Nomura covering transactions, thereby bringing allocation into complete harmony with the Court's ruling. If the Court determines that damages may be awarded based on the approach discussed at the hearing, then Timber Hill will request: (i) that each jury reach a determination as to the amount of damages maintained by the respective classes; (ii) that the Court apply the damages cap to each verdict amount; and (iii) the damages be adjusted *pro rata*, if necessary, based upon the applicability of the damages cap.

## III. CONCLUSION

For the foregoing reasons, Timber Hill respectfully submits that the Court should calculate the damages cap under § 20A.

| | | |
|---|---|---|
| 1 | Dated: December 21, 2017 | Respectfully submitted, |
| 2 | | MARC M. SELTZER<br>STEVEN G. SKLAVER |
| 3 | | KRYSTA K. PACHMAN<br>SUSMAN GODFREY L.L.P. |
| 4 | | |
| 5 | | EDGAR G. SARGENT (*Pro Hac Vice*)<br>esargent@susmangodfrey.com<br>SUSMAN GODFREY L.L.P. |
| 6 | | 1201 Third Avenue, Suite 3800<br>Seattle, Washington 98101 |
| 7 | | Telephone (206) 516-3880<br>Facsimile (206) 516-3883 |
| 8 | | |
| 9 | | ANDREW J. ENTWISTLE<br>VINCENT R. CAPPUCCI<br>ARTHUR V. NEALON |
| 10 | | ROBERT N. CAPPUCCI<br>ENTWISTLE & CAPPUCCI LLP |
| 11 | | |
| 12 | | By:   */s/ Marc M. Seltzer* |
| 13 | | Marc M. Seltzer |
| 14 | | *Attorneys for Plaintiff Timber Hill LLC* |