MARC M. SELTZER (54534)
mseltzer@susmangodfrey.com
STEVEN G. SKLAVER (237612)
ssklaver@susmangodfrey.com
KRYSTA K. PACHMAN (280951)
kpachman@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067-4405
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150

ANDREW J. ENTWISTLE *(Pro Hac Vice)*
aentwistle@entwistle-law.com
VINCENT R. CAPPUCCI *(Pro Hac Vice)*
vcappucci@entwistle-law.com
ARTHUR V. NEALON *(Pro Hac Vice)*
anealon@entwistle-law.com
ROBERT N. CAPPUCCI *(Pro Hac Vice)*
rcappucci@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
299 Park Avenue, 20th Floor
New York, NY  10171
Telephone:  (212) 894-7200
Facsimile:  (212) 894-7272

[Additional Counsel for Plaintiff on Signature Page]

*Attorneys for Plaintiff Timber Hill LLC*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE ALLERGAN, INC. PROXY VIOLATION DERIVATIVES LITIGATION | Case No.  2:17-cv-04776 DOC (KESx) |
| | The Hon. David O. Carter |
| | CLASS ACTION |
| | **PLAINTIFF TIMBER HILL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Date:  May 30, 2018 |
| | Time: 7:30 a.m. |
| | Place: Courtroom 9D |

# TABLE OF CONTENTS

Page

I. INTRODUCTION …………………………………….. 1

II. BACKGROUND OF THE SETTLEMENT ……………………….. 1

III. DESCRIPTION OF THE PROPOSED SETTLEMENT …………… 5

    A. The Settlement Class ……………………………………….. 5

    B. The Settlement Benefits ……………………………………. 5

    C. The Claims Process ………………………………………… 5

    D. Calculation and Payment …………………………………… 6

    E. Release ……………………………………………………… 6

    F. Attorneys' Fees and Expenses …………………………… 7

IV. THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR 7

    THIS COURT TO GRANT FINAL APPROVAL …………………

    A. Final Approval is Appropriate …………………………… 7

        1. The settlement amount is fair in view of the best

           possible recovery at trial and the myriad risks of

           continued litigation …………………………………….. 8

           a. The strength of plaintiff's case ………………………… 8

           b. The risk, expense, complexity, and likely duration

              of further litigation ……………………………………… 9

           c. The risk of maintaining class action status throughout

              the trial ………………………………………………….. 10

           d. The amount offered in settlement ………………………… 11

           e. The extent of discovery completed and the stage of

              proceedings …………………………………………………… 14

           f. The experience and views of counsel ……………………… 14

i

g. The reaction of the class members to the proposed
settlement ……………………………………………... 15

2. The proposed settlement is the result of arm's-length
negotiations undertaken in good faith by experienced
counsel under the guidance of an experienced mediator ……. 15

B. The Plan of Allocation of the Net Settlement Fund is Fair,
Reasonable and Adequate and Should Be Approved ……………. 16

V. CONCLUSION ………………………………………………… 17

1

## TABLE OF AUTHORITIES

2
<u>Page</u>

3

<u>Federal Cases</u>

4

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................................ 8, 16

5

6

*Create-A-Card, Inc. v. Intuit, Inc.*,
  2009 U.S. Dist. LEXIS 93989, at *7 (N.D. Cal. Sept. 22, 2009) .......................... 8

7

*Flinn v. FMC Corp.*,
  528 F.2d 1169 (4th Cir. 1975) ............................................................................ 15

8

*In re "Agent Orange" Prod. Liab. Litig.*,
  597 F. Supp. 740 (E.D.N.Y. 1984) ...................................................................... 15

9

10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ......................................................................... 15, 16

11

*In re Celera Corporation Securities Litigation*,
  No. 5:10-cv-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) .. 13

12

13

*In re Global Crossing Secs. and ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................ 16

14

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .............................................................................. 13

15

16

*Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*,
  834 F.2d 677 (7th Cir. 1987) .............................................................................. 15

17

*Portal Software*,
  2007 WL 4171201, at *5 ..................................................................................... 16

18

19

*Rigo v. Kason Indus., Inc.*,
  No. 11–CV–64–MMA (DHB), 2013 WL 3761400, at *5 (S.D. Cal. July 16,
  2013) ................................................................................................................... 13

20

21

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................ 8

22

<u>Federal Rules</u>

23

Federal Rule of Civil Procedure 23(e) .................................................................... 7

24

<u>Other Authorities</u>

25

Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, Securities Class Action
  Settlements 2016 Review and Analysis at 8, Figure 7 (Cornerstone Research
  2016). ................................................................................................................. 13

26

27

Manual For Complex Litigation (Fourth)
  § 21.632, at 320-21 (4th ed. 2004) ...................................................................... 8

28

i

# I.    INTRODUCTION

Class Counsel respectfully submits this Memorandum of Points and Authorities in Support of Plaintiff's Application for Final Approval of Class Action Settlement.   After hard fought litigation, Timber Hill, LLC ("Timber Hill") and defendants have reached a proposed settlement of this action, which is set forth in the parties' Stipulation and Agreement of Settlement (the "Stipulation"), dated January 26, 2018. On March 19, 2018, the Court granted preliminary approval of this Settlement, certified a Class for purposes of settlement, and approved the form and manner of notice to the Class.[1] Doc. No. 106. The Settlement, if approved by the Court, will establish a cash settlement fund of $40 million for the benefit of the Class and will resolve all claims against defendants in the *Timber Hill* action.

# II.    BACKGROUND OF THE SETTLEMENT

On June 28, 2017, a class action complaint, currently captioned *In re Allergan, Inc. Proxy Violation Derivatives Litigation* (the "Action"), was filed in this Court on behalf of all persons or entities that sold Allergan call options, purchased Allergan put options and/or sold Allergan equity forward contracts from February 25, 2014 through April 21, 2014, inclusive.   Timber Hill alleged defendants violated the federal securities laws through their illicit insider trading and front-running scheme that financially damaged Timber Hill and similarly situated investors by artificially deflating the value of the underlying security and the options and equity forwards traded by Timber Hill and Class Members.

Timber Hill's allegations are also the subject of another related action, *In re Allergan, Inc. Proxy Violation Securities Litigation*, Case No. 8:14-cv-2004-DOC (KESx) ("the Common Stock Class Action"), filed in this District on December 16, 2014. In that action, on March 15, 2017, the Court issued an order ("Class Certification Order") certifying a class (the "Common Stock Class") consisting of:

---

[1]  All capitalized terms used in this memorandum are as defined in the Stipulation.

"All persons who sold Allergan common stock contemporaneously with purchases of Allergan common stock made or caused by Defendants during the period February 25, 2014 through April 21, 2014, inclusive and were damaged thereby." In certifying the Common Stock Class, the Court also denied defendants' separate motion to dismiss for failure to join necessary parties under Federal Rule of Civil Procedure 19(a)(1)(B)(i). In so doing, the Court concluded that derivatives traders "can also be given notice the same time the Class members are given notice of this lawsuit meaning they will have notice and opportunity to intervene to bring their own claims before the case is resolved."

On April 28, 2017, the plaintiffs in the Common Stock Class Action filed a motion seeking approval of notice to the class of the pendency of the Common Stock Class Action. On June 5, 2017, the Court issued an Order denying the plaintiffs' motion for an order approving the class notice, recognizing that "[t]he derivatives traders' potential interests seem more analogous to those of dropped class members, who may have valid claims, but whose claims will not be pursued through this litigation." Case No. 8:14-02004-DOC-KESx, Doc. No. 348 at 4. The Court further noted that "the derivatives traders may have a stronger interest than absent class members, as their hypothetical claims may be essentially precluded if Plaintiffs prevail here." *Id.* at 5. In this regard, the Court also held that if the plaintiffs "recover all of Defendants' gains or losses avoided that there will be nothing left for others to recover who were allegedly harmed by Defendants conduct." *Id.* On June 12, 2017, the plaintiffs in the Common Stock Class Action filed a motion seeking the Court's approval of a modified Notice and Summary Notice of Pendency of Class Action. Doc. No. 359. On June 14, 2017, the Court issued an Order approving the plaintiffs' modified Notice and Summary Notice, finding that the notices "satisfactorily incorporate reference to the likelihood of a damages cap" pursuant to the Court's June 5, 2017 Order. Doc. No. 363.

On July 31, 2017, Timber Hill filed a motion for relief from the PSLRA's

discovery stay, Doc. No. 41, which this Court granted on August 9, 2017, Doc. No. 49.  Class Counsel have had complete access to most of the discovery taken in the Common Stock Class Action, diligently reviewed that discovery in preparation for  pretrial proceedings and trial, and have worked with experts to analyze plaintiff's claims.  Seltzer Decl. ¶ 5, Entwistle Decl. ¶ 3.  Class Counsel also used predictive coding to conduct searches that were targeted by custodian, date range, and/or keyword.  *Id.* While Class Counsel did not manually review every document produced, we reviewed all of the relevant and material documents in each production in their entirety with computer assistance and incorporated the results into proof outlines, chronologies and hot document outlines.  *Id.*  Class Counsel also reviewed over 15,000 Timber Hill documents for relevance and privilege in anticipation of discovery requests, using broad parameters for relevance.  Finally, Class Counsel worked with a team of experts from the Massachusetts Institute of Technology to assess damages on a class-wide basis.  *Id.*

On October 13, 2017, the Court appointed Susman Godfrey L.L.P. and Entwistle & Cappucci LLP as Interim Co-Lead Counsel.  Doc. No. 63.  Subsequently, the Court ordered briefing in this case and the Common Stock Class Action regarding how damages should be allocated among classes in light of the damages cap of Section 20A.  After submitting multiple briefs on this issue and participating in the hearing on the motion for allocation of damages, the parties resolved the case.  On December 28, 2017, following multiple lengthy mediation sessions with Judge Layn R. Phillips and his colleague, Gregory Lindstrom, conducted in person and by telephone, Timber Hill and defendants entered into a binding Memorandum of Understanding to settle the Action for $40 million in cash.

On January 29, 2018, Class Counsel filed a motion seeking preliminary approval of the settlement, certification of a class for settlement purposes, and approval of the form and method of notice. Doc. No. 100. On March 19, 2018, the Court granted that motion. Doc. No. 106. In the Preliminary Approval Order, the

Court certified the class for settlement purposes only; found that Timber Hill was an adequate class representative for settlement purposes only; preliminarily approved the terms of the proposed settlement; and approved the form and content of notice to be provided to members of the class. The Court set a schedule for briefing and objections to the proposed settlement with a hearing to be held on May 30, 2018 at 7:30 a.m.

Prior to agreeing to settle the Action, Timber Hill, through Class Counsel, conducted a thorough investigation of the claims, defenses, and underlying events and transactions that are the subject of the Action. This investigation and Class Counsel's efforts included, among other things: (i) pre-filing investigation and filing of the complaint, (ii) review and analysis of the evidence and applicable law, including the review and analysis of hundreds of thousands of pages of documents produced by defendants and third parties; (iii) consultation with multiple experts retained by Class Counsel; and (iv) engaging in motion practice, including the briefing regarding how damages should be allocated among the classes in light of the damages cap of Section 20A. Seltzer Decl. ¶ 5, Entwistle Decl. ¶ 3.

Defendants have denied and continue to deny any wrongdoing or that they committed any act or omission giving rise to any liability or violation of the law, or that plaintiff sustained any damages. Defendants have denied and continue to deny each and every one of the claims alleged by Timber Hill in the Action, including all claims asserted in Timber Hill's complaint. Timber Hill and Class Counsel believe that the claims asserted in the Action have merit and that the evidence developed to date supports the claims asserted. However, Timber Hill and Class Counsel recognize and acknowledge the expense, uncertain outcome, and risk of any litigation, especially in complex actions such as this Action, as well as the difficulties and delays inherent in such litigation. Timber Hill and Class Counsel are also mindful of the inherent problems of proof and possible defenses to the claims alleged in the Action. Based on their evaluation, Timber Hill and Class

Counsel believe that the Settlement set forth in this Stipulation confers substantial monetary and other benefits upon the Class and is in the best interest of Timber Hill and the Class.

### III.    DESCRIPTION OF THE PROPOSED SETTLEMENT

The Stipulation and the exhibits thereto provide all of the material details of the Settlement terms. Below is a summary of the salient provisions contained in those documents.

A.    The Settlement Class.

The Settlement Class is comprised of all persons and entities who transacted in derivative securities that are price-interdependent with Allergan, Inc.'s publicly traded common stock ("Allergan Derivatives") from February 25, 2014 through April 21, 2014, inclusive (the "Class Period"), excluding the defendants, the officers and directors of defendants during the Class Period; members of the immediate family of the individual defendants and of the excluded officers and directors; any entity in which any defendant, any excluded officer or director, or any member of their immediate family has or had a controlling interest; any affiliates, parents or subsidiaries of the defendants; and the legal representatives, agents, affiliates, heirs, successors or assigns of any of the foregoing, in their capacities as such. Also excluded from the Class are Nomura Holdings, Inc., Nomura Securities International, Inc., Nomura International plc, and their affiliates, parents, subsidiaries and successors.  Also excluded from the Class is any Person who would otherwise be a Class Member but who excludes himself, herself, or itself from the Class by submitting a valid and timely request for exclusion from the Class in accordance with the requirements set forth in the Notice.

B.    The Settlement Benefits.

In full settlement of the claims asserted in the Action against the defendants and in consideration of the releases specified in ¶¶ 3 and 4 of the Stipulation, defendants have deposited $40,000,000 into the Escrow Account.

C.    The Claims Process.

Garden City Group, LLC, the Court-appointed Claims Administrator, mailed 1,754 notice packets to the brokers/nominees/institutions contained in its broker database.  *See* Fraga Decl. ¶ 3.  To date, Garden City Group, LLC has received requests from three brokers for a total of approximately 175 additional notice packets.  *Id.* ¶5.  It is actively working with the brokers to assist them in identifying their clients who may have purchased qualifying securities during the Class Period.

To qualify for a payment, a Class Member must timely and validly submit a completed Proof of Claim.  Any Class Member may also obtain a Proof of Claim on the Internet at the website maintained by the Claims Administrator.  *Id.* ¶ 7.  The Claims Administrator established a toll-free number that Class Members can use to ask questions about the Settlement.  *Id.* ¶ 8.

D.    Calculation and Payment.

The Net Settlement Fund will be distributed to the Authorized Claimants. An "Authorized Claimant" is a Class Member who submits a valid and timely Proof of Claim that is accepted for payment by the Court.  Class Members who do not timely submit valid Proofs of Claim will not share in the Settlement proceeds, but will otherwise be bound by the terms of the Settlement.  The Notice advises Class Members that their claims will be calculated pursuant to Timber Hill's proposed Plan of Allocation if the Plan is approved by the Court.  The Notice further advises Class Members that the Court may approve Timber Hill's proposed Plan of Allocation, or modify it without additional notice to the Class.  Any order modifying the Plan of Allocation will be posted on the settlement website.

E.    Release.

If the Settlement is approved by the Court and becomes effective in accordance with its terms, Timber Hill and each and every other Class Member, on behalf of themselves and each of their respective heirs, spouses, immediate family members, executors, trusts, trustees, representatives, administrators, predecessors,

successors, and assigns, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed each and every one of the Defendants' Released Parties from any and all claims, rights, demands, and causes of action of every nature and description, including both known claims and Unknown Claims (as defined in the Stipulation), whether arising under federal, state or common law, whether class or individual in nature, that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Action against the defendants.  Plaintiffs' Released Claims also do not include any claims relating to the enforcement of the Settlement.

Defendants, likewise, on behalf of themselves and each of their respective heirs, executors, trustees, administrators, predecessors, successors, and assigns, shall be deemed to have fully, finally, and forever waived, released, discharged, and dismissed all claims, rights, demands, and causes of action of every nature and description, including both known claims and Unknown Claims (as defined in the Stipulation), whether arising under federal, state, common or foreign law, that defendants could have asserted against any of the Plaintiffs' Released Parties that arise out of or relate in any way to the institution, prosecution, or settlement of the claims in the Action against the defendants.  Defendants' Released Claims also do not include any claim relating to the enforcement of the Settlement.

F.    Attorneys' Fees and Expenses.

Class Counsel will apply to the Court for an award from the Settlement Fund of attorneys' fees and payment of litigation costs and expenses incurred in prosecuting the Action, plus any earning on such amounts at the same rate and for the same periods as earned by the Settlement Fund ("Fee and Expense Application").  In their motion for attorneys' fees and expenses, filed concurrently herewith, Class Counsel apply for an attorneys' fee award equal to 20% of the Settlement Fund, plus costs and expenses incurred by them in connection with this litigation.

7

IV.    THE SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT FINAL APPROVAL

A.    Final Approval Is Appropriate.

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims.  After the Court has granted preliminary approval and the Class members have been given notice and an opportunity to object, a final hearing must be held, after which, the Court must decide whether the tentative settlement is fair, reasonable, and adequate. *See* Manual For Complex Litigation (Fourth) § 21.632, at 320-21 (4th ed. 2004) (the "Manual").  Approval of a proposed class-action settlement is a matter within the sound discretion of the district court.  *See, e.g.*, *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Create-A-Card, Inc. v. Intuit, Inc.*, 2009 U.S. Dist. LEXIS 93989, at *7 (N.D. Cal. Sept. 22, 2009) (addressing final approval).

To determine whether a settlement is fair, adequate, and reasonable,

> a district court must [ultimately] consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted).

1.    The settlement amount is fair in view of the best possible recovery at trial and the myriad risks of continued litigation.

a.    The strength of plaintiff's case.

The proposed settlement provides substantial economic benefits and certainty of recovery to the Class.  Class Counsel were well informed about the merits of plaintiff's case before settlement negotiations began because Class Counsel began preparing the case for trial from the time of their appointment as interim class

counsel by the Court.  Class Counsel's intense and immediate immersion in the details of this litigation was undertaken in light of the very real possibility that this action might be consolidated for trial with the Common Stock Class Action, and the fact that the Court thereafter established an expedited pretrial and trial schedule in this case.  Class Counsel also needed to be in a position to assess whether we should seek to intervene in order to participate in the summary judgment briefing in the *Basile* action.  Class Counsel therefore quickly sought and obtained and reviewed a substantial portion of discovery produced and depositions taken in the Common Stock Class Action, with a particular focus on discovery central to the *Timber Hill* case.

While Class Counsel believe strongly in the merits of the *Timber Hill* action, we recognize there are nevertheless significant risks of litigation based on the arguments raised by defendants and the damages cap calculation and allocation issues raised both by defendants and the Common Stock Class Action plaintiffs. Class Counsel carefully evaluated those risks and discussed them with Timber Hill, which was kept informed about the progress of the litigation and which had worked with us to provide voluminous documentary discovery and securities trading records to defendants.  Given the inherent risks associated with any trial, let alone a complicated and vigorously contested case such as this, the settlement amount is believed to be fair and may well exceed the relief the derivatives class could receive as a result of a successful trial.

> b. The risk, expense, complexity, and likely duration of further litigation.

This factor also supports the strength of the settlement.  In arriving at the settlement, Class Counsel carefully considered the claims and defenses at issue, including the interrelationship between the Common Stock Class Action and this case and the potential application of collateral estoppel to our claims.

As described above, the availability of disgorgement as a remedy was anticipated to be hotly contested, both as to its availability in a Section 20A case,

9

and how it should be measured and divided between the two cases.  We also anticipated the defendants would raise the related argument that any out-of-pocket losses would need to be netted against profits made in trades of Allergan common stock and derivative securities.  Further, defendants advanced the argument that a lump sum damages award could not be made as a matter of law and that the recoverable damages could only be determined as a result of a claims administration process, during which the defendants could challenge the computation of damages and mount individualized defenses on a class member-by-class member basis.  Doc. No. 76 at 10.  This process, were it to be followed, could dramatically reduce the total damages for the class as a whole and take years to complete.  The settlement entirely eliminates the risk, uncertainty, expense and delay such a process would entail.

In assessing defendants' defenses on the merits, we worked extensively with our experts to analyze plaintiff's class certification motion and evaluate potential damages scenarios, taking into account the parties' arguments about the applicability of the damages cap, the allocation of the damages within the cap, and how different recoveries in the two cases should be pro-rated between the classes. Further, on the merits, while the Court's tentative order on the motions for summary judgment would potentially have positively impacted the *Timber Hill* case, the Court made clear in the hearing on the motions for summary judgment a final ruling had not yet been made.[2]  Defendants also indicated an intent to seek interlocutory appeal of an unfavorable decision on their motions for summary judgment, which would have resulted in greater risk and uncertainty for the Derivatives Class.  The proposed settlement guarantees substantial recovery for the Derivatives Class now while avoiding an uncertain trial and appellate process.

_____

[2] After the parties negotiated the Settlement, at the January 16, 2018 hearing, the Court indicated that it would incorporate its summary judgment discussion in the preliminary and final settlement approval orders because the settlement was informed by the Court's tentative ruling.  *See* Jan. 16, 2018 Hrg. Tr. at 62:4-12.

c.   The risk of maintaining class action status throughout the trial.

Plaintiff has not yet obtained class certification and defendants have not been willing to stipulate to class certification.  Although Plaintiff had not yet moved for class certification, Class Counsel carefully analyzed the submissions and decisions in the Common Stock Class Action with our experts.  We concluded that because the value of the derivatives are all directly and economically related to the price of Allergan common stock, the derivatives class should be certified on the same grounds.  Defendants, however, made clear they intended to oppose class certification, including raising issues related to the typicality of Timber Hill's claims and the availability of class-wide proof of damages.  Although Class Counsel believes that Timber Hill would be successful in certifying a class and maintaining class action status through the trial, there is a risk that defendants would successfully oppose class certification, and an ongoing risk that Timber Hill would need to defend class certification on appeal.

d.   The amount offered in settlement

The settlement amount is fair when considered against the range of potential recoveries in this action.  In evaluating the Derivatives Class' claims, Class Counsel researched and considered two potential measures of recovery:  out-of-pocket losses and disgorgement.  Using the out-of-pocket measure of damages, plaintiff's experts from the Massachusetts Institute of Technology calculated a range of potential recovery of between $77 million and $611 million depending on a number of variables, claims and defenses advanced by defendants including arguments that damages should be fixed when news entered the market and that losses should be netted against gains.  The base computation was based on the plaintiff's experts' opinion as to the "but-for" price of Allergan's stock on February 24, 2014, assuming the common stock price had incorporated all relevant information about Valeant and Pershing's hostile takeover bid.  The experts computed Black-Scholes-Merton European-style price values for the options traded by class members with

11

various adjustments, including for dividends, and also evaluated the cost of covering call options issued by derivatives class members contemporaneously with defendants' trading in Allergan derivative securities.   While Class Counsel are confident in the reasonableness of their experts' damages calculations, those calculations assume that the jury would calculate damages at least through November 17, 2014, the date of the Actavis-Allergan merger announcement.   But, of course, defendants vigorously contest the appropriate timeframe for the measurement of damages and the appropriate method of calculating the Section 20A damages cap.   Defendants also raised a number of other causation-related challenges to the calculation of damages.   In other words, plaintiff's damages claims were expected to be vigorously challenged by defendants.

Using the disgorgement theory of damages, Class Counsel and their experts calculated the maximum potential recovery to total $3,367,949,239.19.[3]   That number was calculated by subtracting the total price paid from the total sale price received, according to the Pollman formula.   **Total Sale Price Received:** Sale Price Received for Derivatives ($6,396,391,612.74)[4] + Dividends Received on Derivative Transactions ($5,404,412.79)[5] + Interest on Derivative Transactions ($590,229,184.39)[6] = $6,992,025,209.92.   **Total Price Paid:**  Price Paid to Acquire Derivatives ($3,141,914,028.00)[7] + Price Paid to Exercise Derivatives

---

[3]  The number is precise because of the data we were able to use in making that calculation is similarly precise.

[4] Defendants Pershing Square Capital Management, L.P., PS  Management GP, LLC, PS Fund 1, LLC and William Ackman's Amended Responses to Plaintiff's Third Set of Interrogatories, dated December 16, 2016; Dkt. 74: Pershing Square's Answer and Affirmative Defenses

[5] The Center For Research In Security Prices, available at http://www.crsp.com/ ret'd Nov. 3, 2017

[6] http://people.stern.nyu.edu/adamodar/New_Home_Page/datafile/wacc.htm

[7] Pershing Defendants' Responses to Plaintiff's First Set of Interrogatories,  dated December 16, 2016.

($482,161,942.73)[8]     =     $3,624,075,970.73.     Thus,     $3,367,949,239.19 ($6,992,025,209.92 - $3,624,075,970.73) is the total amount of profits earned by the defendants on their illegal trading (an amount equal to the total Section 20A damages cap).  This measure of damages was disputed by defendants because they contested both the availability of disgorgement as a remedy in a Section 20A case based on an underlying violation of Section 14(e) of the Securities Exchange Act of 1934 and the amount of their profits—which, as the Court is aware, defendants maintained was less than one billion dollars.

Additionally, Plaintiff's theories of recovery do not take into account the means by which damages would be allocated among the classes.  The Common Stock Class Action plaintiffs maintained that under their approach as to how damages should be allocated, the Derivatives Class' total damages would be equal to 6% of the total recovery for both classes.  Doc. No. 71 at 2.[9]  Given the uncertainty regarding the allocation of damages and implementation of the damages cap, the $40 million settlement is a favorable result for the Derivative Class.[10]

---

[8] PERCAL0325041 (email).

[9] Defendants, for example, contend that the damages cap should be measured as of June 18, 2014 – effectively capping their Section 20A liability at one billion dollars or less. Dkt. 86 at 1.  Defendants also argued the jury would have to determine whether PS Fund 1 traded on the basis of material, nonpublic information related to a tender offer that it obtained from Valeant, and if so, make factual findings to determine the date on which that material nonpublic information was publicly disseminated.  *Id.*  Such an approach, if adopted by the Court, could further substantially reduce the derivatives class' potential damages.

[10] Even putting aside the limitations on recoverable damages imposed by the Section 20A cap, the settlement far exceeds the median recovery as a percentage of estimated damages in similar cases. According to a recent study for securities class actions that settled with estimated damages of between $500 million and $1 billion, the median recovery was 1.8% for cases that settled between 2006-2015, and 1% for cases that settled in 2016. Laarni T. Bulan, Ellen M. Ryan & Laura E. Simmons, Securities Class Action Settlements 2016 Review and Analysis at 8, Figure 7 (Cornerstone Research 2016).

A settlement that is substantially less than the possible maximum recovery amount may be fair and adequate in light of the uncertainties of litigation. *See, e.g., In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000) (approving a settlement that was assumed to be roughly one-sixth of the maximum potential recovery); *In re Celera Corporation Securities Litigation,* No. 5:10-cv-02604-EJD, 2015 WL 1482303, at *6 (N.D. Cal. Mar. 31, 2015) (approving a settlement with a class payment of approximately seventeen percent of the maximum potential recovery). *See also Rigo v. Kason Indus., Inc.*, No. 11–CV–64–MMA (DHB), 2013 WL 3761400, at *5 (S.D. Cal. July 16, 2013) ("[D]istrict courts have found that settlements for substantially less than the plaintiff's claimed damages were fair and reasonable, especially when taking into account the uncertainties involved with the litigation.").

e.    The extent of discovery completed and the stage of proceedings.

Class Counsel have had complete access to most of the discovery taken in the Common Stock Class Action, diligently reviewed that discovery in preparation for pretrial proceedings and trial, and have worked with experts to analyze the Derivative Plaintiffs' claims.  Seltzer Decl. ¶ 5, Entwistle Decl. ¶ 3.  In addition to reviewing that discovery, Class Counsel reviewed all of the substantive filings in the Common Stock Class Action, which helped to inform our knowledge and opinions regarding the merits of the *Timber Hill* case.  Additionally, the Plaintiff made several motions in this case and persuaded defendants to answer rather than move to dismiss, further advancing the case.  Given the stage of these related proceedings, there can be no question that Class Counsel had a clear view of the strengths and weaknesses of the Derivatives Class' claims and potential damages.  Sufficient discovery has been conducted in this matter to allow Class Counsel to adequately investigate the pertinent legal and factual issues and enable them to recommend the settlement.

f.    The experience and views of counsel.

14

Class Counsel include attorneys who have many years of experience serving as counsel in numerous complex class actions, including litigating cases arising under the federal securities laws.  Seltzer Decl. ¶ 45.  Class Counsel also retained and were advised by a team of leading experts all of whom are professors at Massachusetts Institute of Technology.  Seltzer Decl. ¶ 5, Entwistle Decl. ¶ 3.  Class Counsel fully endorse the settlement as fair, reasonable and adequate to the derivatives class.[11]  Seltzer Decl. ¶ 45.

> g.    The reaction of the class members to the proposed settlement.

Because the deadline for derivatives class members to submit objections has not passed (and no early objections have been filed), this factor cannot yet be evaluated other than to observe that Timber Hill one of the largest market participants supports the settlement.  No Class member has raised any concern about the settlement following the broad reporting of news related to the settlement in the media, nor have any Class members expressed a desire to opt out.  Fraga Decl. ¶¶ 10-11.

> 2.    The proposed settlement is the result of arm's-length negotiations undertaken in good faith by experienced counsel under the guidance of an experienced mediator.

In addition to the factors just discussed, the court must also be satisfied that "the settlement is not the product of collusion among the negotiating parties."  *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011) (holding that district court abused its discretion in approving settlement agreement).  Factors considered here include:  (1) Whether the settlement resulted from arm's-length negotiations between experienced, capable counsel, *see Flinn v. FMC Corp.*, 528 F.2d 1169, 1173 (4th Cir. 1975) ("While the opinion and recommendation of experienced counsel is not to be blindly followed by the trial court, such opinion

---

[11] Plaintiff does not address the presence of a government participant, since there was no government participant.  But the absence of a government participant only highlights Class Counsel's contributions to the case.

should be given weight in evaluating the proposed settlement."); (2) The end result achieved, *see Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust Co.*, 834 F.2d 677, 684 (7th Cir. 1987) ("[r]ather than attempt to prescribe the modalities of negotiation, the district judge permissibly focused on the end result of the negotiation. . . . The proof of the pudding was indeed in the eating."); *see also, In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984) (the most important concern for the court in reviewing a settlement of a class action is the strength of the plaintiff's case if it were fully litigated), *aff'd*, 818 F.2d 145 (2d Cir. 1987); and (3) Whether counsel are to receive a disproportionate distribution of the settlement under a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds where fees not awarded revert to defendants rather than to the class. *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011).

The parties negotiated at arm's-length and in good faith under the supervision and with the assistance of the Hon. Layn R. Phillips, a well-respected former United States District Judge and highly experienced meditator, and his colleague Greg Lindstrom, both of whom are intimately familiar with both cases. The parties worked long and hard, often late into the night over the holidays to reach a resolution of this matter. The Court has Mr. Lindstrom's declaration in this matter and had an opportunity to meet and confer privately with Mr. Lindstrom during the January 16, 2018 hearing.

B. The Plan of Allocation of the Net Settlement Fund is Fair, Reasonable and Adequate and Should Be Approved

Approval of a plan of allocation of settlement proceeds is governed by the same overarching standard of fairness applied to the settlement. *See Portal Software*, 2007 WL 4171201, at *5 ("The court turns next to the proposed plan of allocation, which must be fair, reasonable and adequate.") (citing *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992)). "When formulated by competent and experienced class counsel, an allocation plan need have only a

16

'reasonable, rational basis.'"  *In re Global Crossing Secs. and ERISA Litig.*, 225
F.R.D. 436, 462 (S.D.N.Y. 2004).

The Plan of Allocation, detailed in the Declaration of S.P. Kothari, Doc. No.
101-4, is rational and ensures an equitable distribution of the Net Settlement Fund
among Authorized Claimants based solely on their respective transactions.  Plaintiff
submits that the Plan of Allocation, which was fully disclosed in the Notice, is fair,
reasonable, and adequate and should be approved.

<h2 style="text-align:center">V.    CONCLUSION</h2>

For all the above-stated reasons, Plaintiff respectfully requests that the
Motion be granted and the Court enter an order granting final approval of the
Settlement.

Dated: April 25, 2018           Respectfully submitted,

MARC M. SELTZER
STEVEN G. SKLAVER
KRYSTA K. PACHMAN
SUSMAN GODFREY L.L.P.


EDGAR G. SARGENT (*Pro Hac Vice*)
esargent@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101
Telephone (206) 516-3880
Facsimile (206) 516-3883

ANDREW J. ENTWISTLE
VINCENT R. CAPPUCCI
ARTHUR V. NEALON
ROBERT N. CAPPUCCI
ENTWISTLE & CAPPUCCI LLP

By:    */s/ Marc M. Seltzer*
         Marc M. Seltzer

*Attorneys for Plaintiff Timber Hill LLC*